DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a Jackson County Common Pleas Court judgment that (1) found a prior separation agreement, between Sally Ann Plymale, nka Sally Ann Wolford, petitioner below and appellee herein, and Robert Duane Plymale, petitioner below and appellant herein, to be unambiguous; and (2) ordered appellant to comply with the agreement's terms.
 {¶ 2} Appellant assigns the following error for review and determination:
"THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT FOUND THAT THE SEPARATION AGREEMENT PROVISION RELATING TO RETIREMENT BENEFITS WAS UNAMBIGUOUS."
 {¶ 3} The parties married in 1972 and have one child who is now emancipated. In 1991 the marriage was dissolved and the trial court incorporated into its decree a separation agreement that included the following provision concerning appellant's pension benefits:
"The parties hereto are aware of the pension and retirement benefits available to ROBERT DUANE PLYMALE and the disparity between such benefits and the lack of retirement benefits available to SALLY ANN PLYMALE and hereby agree that at the time ROBERT DUANE PLYMALE commences receipt of such benefits, SALLY ANN PLYMALE shall be deemed the vested owner of Twenty-five percent (25%) of such benefits and shall be paid a sum equal to such percentage by direct assignment."
 {¶ 4} On April 14, 2004, appellee commenced the instant proceeding when she requested the trial court to order the State Teacher's Retirement System of Ohio (STRS) to pay to her the share of her ex-husband's retirement benefits awarded to her thirteen years earlier. Appellant responded and requested the court to refrain from issuing any order to STRS and to construe the parties' separation agreement. In particular, appellant asserted that (1) he was unrepresented when he entered into the agreement; (2) his ex-wife's previous counsel drafted the agreement's language; and (3) he understood the agreement's language to specify that appellee is entitled to twenty-five percent of the pension's value in 1991, rather than twenty-five percent of the benefits ultimately paid to appellant at retirement. Appellant maintained that the agreement is ambiguous, that it must be construed against the drafter and that the court should adopt his interpretation of the pension distribution provision.
 {¶ 5} The matter came on for hearing on December 29, 2004 and the trial court determined that it would not hear any evidence as to the parties' intent until it determined whether the agreement's language is ambiguous. After the parties submitted written briefs, the court found that the language is, in fact, unambiguous. The court reasoned that "[r]etirement benefits do not become retirement benefits until such time as they are paid." Thus, the court concluded, the agreement's language indicates that the parties intended to divide the pension benefits when they were paid, rather than at the time of the dissolution. The court thus ordered appellant to commence payment of the benefits. This appeal followed.
 {¶ 6} Appellant asserts in his assignment of error that the trial court erred by finding the separation agreement's language to be unambiguous. He contends that the language is inherently ambiguous and that the trial court should have construed that agreement to coincide with the parties' intent.
 {¶ 7} Our analysis begins from the settled premise that separation agreements are contracts. Tapp v. Tapp (1995), 105 Ohio App.3d 159,162, 663 N.E.2d 944; Brown v. Brown (1993), 90 Ohio App.3d 781, 784,630 N.E.2d 763; Forstner v. Forstner (1990), 68 Ohio App.3d 367, 372,588 N.E.2d 285. Thus, when interpreting a dissolution decree that incorporates a separation agreement, courts must apply the general rules of contract interpretation. Patel v. Patel (Sept. 9, 1999), Athens App. No. 99CA21; Keeley v. Keeley (July 21, 1997), Clermont App. No. CA-97-02-013; Scott v. Scott (Apr. 29, 1994), Lucas App. No. L-932-51. When construing contract language, the principal goal is to effectuate the parties' intent. Skivolocki v. East Ohio Gas Co. (1974),38 Ohio St.2d 244, 313 N.E.2d 374, at paragraph one of the syllabus; also see Evans v. Evans, Scioto App. No. 02CA2869, 2003-Ohio-4674, at ¶ 9. It is generally presumed, however, that the parties' intent resides in the language employed in the written document. Kelly v. Medical Life Ins.Co. (1987), 31 Ohio St.3d 130, 509 N.E.2d 411, at paragraph one of syllabus; Blosser v. Enderlin [1925], 113 Ohio St. 121, 148 N.E. 393, at paragraph one of the syllabus. Thus, words appearing in written contracts are assigned their ordinary meaning, unless some manifest absurdity results or another meaning is evidenced from the instrument. SeeAlexander v. Buckeye Pipe Line Co. (1978), 53 Ohio St.2d 241,374 N.E.2d 146, at paragraph two of the syllabus. Moreover, because judicial interpretation of contract language is a question of law, appellate courts apply a de novo standard when conducting their review. See Drake v. Drake (Jun. 3, 1998), Highland App. No. 97CA934; Hurst v.Baker (Apr. 17, 1997), Gallia App. No. 96CA07; also see generally, Grahamv. Drydock Coal Co. (1996), 76 Ohio St.3d 311, 313, 667 N.E.2d 949.
 {¶ 8} In the case sub judice, the separation agreement provides that "at the time ROBERT DUANE PLYMALE commences receipt of such benefits,
SALLY ANN PLYMALE shall be deemed the vested owner of Twenty-five percent (25%) of such benefits and shall be paid a sum equal to such percentage by direct assignment." (Emphasis added.) In this context, the term "benefit" means "payments made" in accordance with an insurance contract. See The American Heritage Dictionary (2nd Ed. 1985), 171. The parties use of the term "benefits" in this agreement does not contemplate the value of the pension in 1991; rather, it contemplates payments to be received upon retirement. The agreement refers to a time when appellant receives his pension benefits. We agree with the trial court's conclusion that this language is not ambiguous. This agreement does not give appellee twenty-five percent of appellant's pension as it was valued in 1991. If that were the case, the phrase would not refer to the time of "receipt of such benefits;" rather, it would have referred to the pension as it stood in 1991. Moreover, if the parties had intended for appellee to receive twenty-five percent of the pension as it was valued in 1991, the parties would have, in all likelihood, included a pension valuation at that time.
 {¶ 9} In short, we believe that appellant's contention is not supported by the instrument's language. The parties' agreement provides that appellee is to receive twenty-five percent of appellant's pension benefit at the time he commences the receipt of those benefits. We find no ambiguity.
 {¶ 10} Appellant also argues that the agreement is ambiguous for other reasons. For instance, he contends that at least ten possible meanings exist for the term "benefits" including, inter alia, a gross monthly benefit, a net monthly benefit or even a lump sum payment. We are not persuaded. The separation agreement provides that appellant is entitled to twenty-five percent of benefits when her ex-husband "commences receipt of such benefits." In other words, appellee is entitled to one-quarter of whatever benefit is paid to appellant, whether it be a gross monthly benefit, a net monthly benefit or a lump sum payment. Appellant also claims that the agreement is ambiguous because it does not specify whether appellee will share in any survivor's benefit. Again, we are not persuaded. First, because appellant is alive, this is a hypothetical question and courts generally do not render advisory opinions on issues that are not in actual controversy. Second, section eight of the separation agreement requires appellant to "continue to maintain the beneficiary designations for such benefits in favor of SALLY ANN PLYMALE." This appears to answer the question of survivor benefits.
 {¶ 11} Appellant also argues the parties could not have contemplated retirement funds accrued after their marriage's termination. We disagree. The first sentence in section eight of the parties' separation agreement provides that appellee was awarded twenty-five percent of appellant's pension because of "the disparity" between their retirement plans or the lack of benefits available to her altogether. This indicates that the parties contemplated future retirement and that the parties' agreement stems from the view that upon retirement appellee would not enjoy the same degree of benefits as appellant.
 {¶ 12} We recognize and understand that appellant, in retrospect, may now be dissatisfied with the separation agreement's retirement benefit language. We note that appellant was uncounselled and may not have been fully apprised of the agreement's ramifications. Nevertheless, appellant explicitly agreed to the agreement's terms, including the retirement benefit language and, as we concluded above, as did the trial court, that language is unabmiguious.
 {¶ 13} For these reasons, we agree with the trial court's conclusion that the separation agreement is unambiguous and that appellee is entitled to twenty-five percent of the retirement benefits that are paid to appellant. Accordingly, we hereby overrule appellant's assignment of error and affirm the trial court's judgment.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Jackson County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Harsha, J. Kline, J.: Concur in Judgment Opinion.