DECISION AND JUDGMENT ENTRY
{¶ 1} During their divorce proceeding, Vicki L. Pierron and Michael Pierron reached a settlement agreement that divided their marital property. The trial court incorporated this settlement into a final decree of divorce, which awarded Ms. Pierron "[t]he sum of $111,899.14 from [Mr. Pierron's] employee savings program." However, the parties later disputed the effective date of the distribution of this property. Although the decree unambiguously makes July 11, 2006 the date of the termination of the marriage, the trial court subsequently made the distribution of the savings plan effective February 9, 2005, which was the date the parties used to value the account. Ms. Pierron argues the court merely interpreted an ambiguous decree. However, Mr. Pierron contends the trial court impermissibly modified the final divorce decree by changing the effective date of the distribution of a share of marital property. Where a *Page 2 
decree is silent about the date of distribution, the date the marriage terminates controls that issue. Thus, we reverse and remand.
 I. Facts and Procedural History {¶ 2} Vicki L. Pierron and Michael Pierron each sought a divorce from the other. On July 11, 2006, the trial court held a final hearing, at which "[t]he parties recited their agreement resolving all issues before the Court on the record in open court, which is approved as recited." Thus, the trial court incorporated their oral settlement agreement into its Final Order of Divorce, which stated:
 upon agreement of the parties, it is ORDERED, ADJUDGED, AND DECREED that:
 1. The Plaintiff shall have as her own the following, free and clear of any interest of the Defendant:
 * * *
 b. One-half of the marital portion of Defendant's USEC pension pursuant to a Qualified Domestic Relations Order (QDRO), with the term of the marriage May 21, 1988 through February 9, 2005.
 c. The sum of $111,899.14 from Defendant's employee savings program with Fidelity/USEC, with said funds to be rolled over into a similar account to avoid income tax consequences. If necessary, the parties shall execute a Qualified Domestic Relations Order, to effectuate this agreement and to avoid income tax consequences.
 {¶ 3} A dispute soon arose regarding the meaning of the language concerning the savings plan. Both Ms. Pierron and Mr. Pierron presented the trial court with proposed Qualified Domestic Relations Orders ("QDROs"), which were similar. However, Ms. Pierron's proposed QDRO requested February 9, 2005, as the effective date of the distribution of the $111,899.14. This was the date that the parties had used in placing a value on the employees savings program account, as well as being the date that Ms. Pierron filed for a divorce. A statement dated February 9, 2005, is the only *Page 3 
evidence regarding the value of that account. Ms. Pierron therefore requested that the trial court award her the gains and losses attributable to her share of the account since that date. Mr. Pierron's proposed order requested July 11, 2006, as the date of distribution. That was the date the parties had reached their settlement agreement and the date the court determined the marriage ended in its Final Order of Divorce. Mr. Pierron argued that the Final Order of Divorce provided Ms. Pierron with a lump sum award as of the date of the termination of the marriage and that she was entitled only to gains from July 11, 2006.
 {¶ 4} The trial court issued an order that provided the effective date of the distribution was February 9, 2005, and explained:
 [t]he parties, in settling the division of property, used the amounts given by Pension Evaluators and the amount [$222,834.70] to determine an equal and equitable division of these accounts and division of all property. The amounts determined to be Plaintiff's were the amounts of these accounts as of February 9, 2005, and it would not be equitable to use any other date as the effective date of transfer of Plaintiff's interest in the Fidelity/USEC savings plan.
The trial court therefore awarded Ms. Pierron "any gains or losses associated with her share of the account since that date." After Mr. Pierron filed a notice of appeal from this judgment entry, the trial court journalized the QDRO. Mr. Pierron filed a notice of appeal from the entry of the QDRO as well. We consolidated these appeals, which address the same assertion of error.
 II. Assignments of Error {¶ 5} In these two consolidated appeals, Mr. Pierron raises three assignments of error:
 1. "The trial court committed reversible error in failing to find the parties' Final Order of Divorce is clear and unambiguous and its *Page 4 
interpretation is a matter of law, inasmuch as said Final Order of Divorce specifically sets forth that Plaintiff-Appellee is to receive free and clear of any interest of Defendant-Appellant the sum of $111,899.14 from Defendant-Appellant's employees savings program with Fidelity/USEC."
 2. "The trial court committed reversible error in modifying the terms of the parties' Final Order of Divorce to allow Plaintiff-Appellee to receive any gains or losses associated with her share of Defendant-Appellant's employee savings account, inasmuch as said Final Order of Divorce is unambiguous, and its interpretation is a matter of law."
 3. "The trial court committed reversible error in entering Plaintiff-Appellee's proposed Qualified Domestic Relations Order — United States Enrichment Corporation Savings Program, which allowed for Plaintiff-Appellee to receive any interest and investment earnings attributable to her assigned benefit for periods subsequent to February 9, 2005, until the date of total distribution."[1]
Although Mr. Pierron raises three assignments of error, he presents only one argument. App. R. 16(A)(7) technically requires separate arguments for each assignment of error. While appellate courts may jointly consider two or more assignments of error, the parties do not have the same option in presenting their arguments. Keffer v. Cent. Mut. Ins.Co., Vinton App. No. 06CA652, 2007-Ohio-3984, at ¶ 8 n. 2. Nonetheless, we will review all three assignments because he essentially raises the same issue in each of them.
 III. The Divorce Decree {¶ 6} The overriding issue is whether the trial court's subsequent application of a February 9, 2005, distribution date amounts to a clarification, or alternatively, a modification of its property division. That answer depends largely upon whether the decree is ambiguous. *Page 5 
 {¶ 7} Once a court has made an equitable property division, it has no jurisdiction to modify its decision. R.C. 3105.171(I); Knapp v.Knapp, Lawrence App. No. 05CA2, 2005-Ohio-7105, at ¶ 40. However, the trial court does retain jurisdiction to "`clarify and construe its original property division so as to effectuate its judgment.'"Knapp, 2005-Ohio-7105, at ¶ 40, quoting McKinley v. McKinley (2000), Athens App. No. 99CA52, unreported. While we have recognized that the court has broad discretion in clarifying the terms of its previous decree, we have also held that "a court order purporting to clarify the prior judgment may not vary from, enlarge, or diminish the relief embodied in the final decree." Knapp, 2005-Ohio-7105, at ¶ 40; see alsoMcKinley v. McKinley (2000), Athens App. No. 99CA52, unreported ("[A] judgment entry in a divorce case that clarifies, but does not modify, the original property division is valid. The court has broad discretion in clarifying the terms of its previous decree.") (internal citation omitted). These rules are based upon the fact a settlement agreement constitutes a binding contract. See Davis v. Davis (2000) Pike App. No. 99CA630, unreported, quoting Walther v. Walther (1995),102 Ohio App.3d 378, 383, 657 N.E.2d 332. Thus, when interpreting a divorce decree that incorporates such an agreement, courts must apply the general rules of contract interpretation. Plymale v. Wolford, Jackson App. No. 05CA5,2005-Ohio-5224, at ¶ 7; McKown v. McKown (1995) Highland App. No. 94CA866, unreported (applying the same standard of review and rules of interpretation to divorce decrees and dissolution decrees). In essence, a court may construe an ambiguous decree, but it must enforce an unambiguous one as it is written. Parsons v. Parsons (1997), Jackson App. No. 96CA791, unreported. *Page 6 
 {¶ 8} We believe the initial determination of whether an ambiguity exists presents an abstract legal question, which we review on a de novo basis. See Stewart v. Stewart (1992), Ross App. No. 92CA1885, unreported; see, also, Plymale, supra, (conducting a de novo review of a separation agreement for ambiguities). Should we determine that an ambiguity exists, we would then afford the trial court discretion to clarify the intent of the agreement. But where no ambiguity exists, both the trial court and this court are required to apply it as written, i.e., as a matter of law. Stewart, supra, citing Lating v. WoodpathDevelopment Co. (1991), 57 Ohio St.3d 212, 214.
 {¶ 9} As we have previously explained, "[contractual terms are ambiguous if the meaning of the terms cannot be deciphered from reading the entire contract or if the terms are reasonably susceptible of more than one interpretation." Lewis v. Mathes, 161 Ohio App.3d 1,2005-Ohio-1975, 829 N.E.2d 318, at ¶ 19.
 {¶ 10} However, mere silence on an issue or a failure to address it does not create an ambiguity where none otherwise exists. See Thomas v.Thomas, Franklin App. No. 00AP-541, unreported ("[T]he divorce decree is not ambiguous because the trial court failed to award the defendant interest on her pension distribution when it could have done so.").
 {¶ 11} With these principles in mind, we turn to the divorce decree to see whether it is ambiguous. Among the property that Ms. Pierron was to receive from the settlement agreement was "[o]ne-half of the marital portion of Defendant's USEC pension pursuant to a Qualified Domestic Relations Order (QDRO), with the term of the marriage May 21, 1988 through February 9, 2005" and "[t]he sum of $111,899.14 from Defendant's employee savings program with Fidelity/USEC." The decree awards a *Page 7 
specific percentage of the pension and details the term of the marriage for purposes of determining Ms. Pierron's marital share of it. In contrast, the decree awards Ms. Pierron a specific dollar amount of the employee savings program account without specifying an effective date of the distribution, even though the decree provides that the termination of the marriage was July 11, 2006.
 {¶ 12} For purposes of the division of marital property, R.C.3105.171(A)(2) establishes a statutory presumption that the proper date for the termination of a marriage is the date of the final divorce hearing. It also provides for an alternative date for determining what is marital property. The statute states:
 (A) As used in this section:
 * * *
 (2) "During the marriage" means whichever of the following is applicable:
 (a) Except as provided in division (A)(2)(b) of this section, the period of time from the date of the marriage through the date of the final hearing in an action for divorce or in an action for legal separation;
 (b) If the court determines that the use of either or both of the dates specified in division (A)(2)(a) of this section would be inequitable, the court may select dates that it considers equitable in determining marital property. If the court selects dates that it considers equitable in determining marital property, "during the marriage" means the period of time between those dates selected and specified by the court.
 * * *
The duration of the marriage is critical in distinguishing marital, separate, and post-separation assets and liabilities, and in determining appropriate dates for the valuation of those assets and liabilities.Pottmeyer v. Pottmeyer, Washington App. 02CA67, 2004-Ohio-3709, at ¶ 12. We realize the trial court need not utilize the same valuation date for each item of marital property. Green v. Green (1998), Ross App. No. *Page 8 
97CA2333, unreported. However, in this case neither the parties nor the court specified a distribution date for the employee savings plan account. Thus, the date the divorce decree established as the termination of the marriage should have also been the date of distribution. R.C. 3105.1714(A)(2)(a); Pottmeyer, 2004-Ohio-3709, at ¶ 15. In other words, the silence in the decree concerning the savings plan does not create an ambiguity.
 {¶ 13} Like the trial court, we are concerned with concepts of equity and a desire to avoid windfalls in favor of one side over the other. However, the distribution of the savings plan clearly does not contain any provision for the allocation of investment performance. While the parties could have provided for that anticipated event, they did not do so. Likewise, the parties could have agreed to award Ms. Pierron a certain percentage of the savings plan's value to be calculated at a time that would reflect post-decree changes. They did not take that approach either. And, unfortunately for Ms. Pierron, the question of perceived inequity is not relevant to the issue of whether the language of the decree is ambiguous on its face.
 {¶ 14} Accordingly, we hold that the divorce decree unambiguously gives Ms. Pierron a $111,899.14-share of the employee savings plan account, effective as of the termination of the marriage, i.e., July 11, 2006. Thus, the trial court should have simply applied the decree as it was written rather than construing it. When the trial court decided Ms. Pierron's share of that account would be valued as of February 9, 2005, it impermissibly modified its prior division of marital property by effectively giving her a greater share of the account. *Page 9 
 {¶ 15} A trial court may not enter a QDRO that "var[ies] from, enlarge[s], or diminish[es] the relief embodied in the final decree."Knapp, 2005-Ohio-7105, at ¶ 40; see, also, McGeorge v. McGeorge (2001), Franklin App. No. 00AP-1151, unreported ("[A] trial court may not add terms to a QDRO that were not in the decree under the guise that it is `interpreting' an `ambiguity' in the decree. * * * [I]f the parties or court desired these terms be included in the division of [property], they could have provided for such in the decree. This reasoning would be especially true in the present case where the parties negotiated and agreed to the terms of the property division via a separation agreement. * * * [I]nequity perceived in hindsight does not constitute an ambiguity and is irrelevant when interpreting the meaning of the terms of a decree.").
 {¶ 16} Ms. Pierron argues, however, that we may affirm the judgment on the basis that the trial court could modify the divorce decree under Civ. R. 60(B)(1) and (5). Ms. Pierron alternatively sought relief under Civ.R. 60(B) asserting that the divorce decree inadvertently omitted the date of evaluation for the employee savings plan account and that equity required a modification of the decree in her favor. However, there is nothing in the record indicating that the trial court ruled on that motion prior to the filing of the notice of appeal. Upon the filing of a notice of appeal, a trial court loses jurisdiction to decide a Civ.R. 60(B) motion absent a remand from the appellate courts. Howard v.Catholic Social Services, 70 Ohio St.3d 141, 147, 1994-Ohio-219. Accordingly, we have nothing to review in that regard.
 IV. Conclusion {¶ 17} Because the divorce decree unambiguously awarded Ms. Pierron a fixed sum from Mr. Pierron's employee savings plan account effective July 11, 2006, the trial *Page 10 
court could not construe the decree in an attempt to equitably modify it. Accordingly, we reverse the judgment awarding Ms. Pierron that sum effective February 9, 2005, and remand the cause to the trial court for further proceedings consistent with this opinion.
 JUDGMENT REVERSED AND CAUSE REMANDED. *Page 11 
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE REVERSED AND CAUSE BE REMANDED and that Appellant recover of Appellee costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court, Domestic Relations Division, to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, P.J. Kline, J.: Concur in Judgment and Opinion.
[1] Michael has set forth five assignments of error, but four of those assignments are duplicative. In case no. 07CA3153, he asserts assignments of error one and two above. In case no. 07CA3159, he asserts assignments of error one, two, and three. *Page 1