DECISION AND JUDGMENT ENTRY
{¶ 1} During their divorce proceeding, Deanna Martin and Jeffrey Howard reached an agreement concerning the division of their martial property. The trial court incorporated the agreed terms into the final divorce decree, which awarded each party "50% of the other parties' retirement accrued as of November 21, 2003," i.e., the date Ms. Martin filed for divorce. The trial court later refused to accept Ms. Martin's proposed Qualified Domestic Relation Orders ("QDROs") because it found them to be inconsistent with the terms of the divorce decree.
 {¶ 2} Ms. Martin contends that the trial court misinterpreted the divorce decree and argues that its method of establishing the value of Mr. Howard's retirement plans was inequitable. She claims that she is entitled to 50% of the value of his retirement plans as of November 21, 2003, plus any interest, dividends, earnings, or other increases in the value of her share that accrue after November 21, 2003 until the date of *Page 2 
distribution. However, Mr. Howard contends that the unambiguous language in the divorce decree provides that Ms. Martin is simply entitled to 50% of the sum certain value of his retirement plans as of November 21, 2003. Thus, he argues that the trial court lacked jurisdiction to modify the parties' agreement as contained in the final decree.
 {¶ 3} We conclude that the language in the divorce decree concerning the division of the parties' retirement plans is unambiguous and that it entitles Ms. Martin to receive only a sum certain amount of Mr. Howard's retirement plans, valued as of November 21, 2003. Therefore, the trial court did not abuse its discretion in refusing to adopt Ms. Martin's QDROs. Accordingly, we affirm the trial court's judgment.
 I. Facts and Procedural History {¶ 4} Ms. Martin filed a complaint for divorce on November 21, 2003. After protracted litigation, the trial court issued its final judgment entry on September 27, 2005, and awarded the parties a divorce. In its final judgment entry, the court stated:
 Insofar as distribution of assets, payment of debts, spousal support and other matters, the Court finds that the parties have entered into an agreement pertaining to all matters in issue, and upon the parties' application, finding said agreement to be in all respects fair, just and equitable, the same is hereby adopted and approved as the order of the Court, to-wit:
 * * *
 6) That each party shall receive 50% of the other parties' retirement accrued as of November 21, 2003. All other stocks, CD's, 401-K's, IRA's, ESP's and other retirement savings accounts shall be divided equally, with the value assessed as of said date.
 {¶ 5} Neither party appealed the trial court's judgment. Thereafter, Ms. Martin, represented by new counsel, presented the trial court with proposed QDROs. *Page 3 
According to Ms. Martin, her proposed QDROs provided that she would receive 50% of the value of Mr. Howard's retirement at the time of its distribution. On April 24, 2007, Ms. Martin filed a motion requesting that the trial court approve her proposed QDROs. After conducting a hearing, the court issued a decision that denied her request. The trial court noted that Ms. Martin's position was that "she should receive 50 percent of certain accounts as of November 21, 2003 plus any interest, dividends and the like" whereas Mr. Howard argued that "she is entitled to 50 percent of certain accounts as of November 21, 2003, and nothing else." The trial court found that the language set forth in the divorce decree provided that "[e]ach of the parties to this action were granted a sum certain in the other's retirement plans based on the valuation as of November 21, 2003." The court further explained:
 The value of a retirement plan may go up or down based on the value of the assets in the fund. If the value of the `other' person's retirement plan decreases in value, the value of the grant remains the same. The court finds that the plaintiff is entitled to a sum certain in the defendant's: [sic] retirement plans as per the valuation as of November 21, 2003. Any increase in the funds do not affect what the plaintiff is to receive, no dividends etc. effect [sic] the amount and likewise no decrease in the retirement plan effects [sic] what the plaintiff is to receive[.]
 {¶ 6} Thereafter, the court issued a final judgment entry and found that the wording of the divorce decree concerning the allocation of Ms. Martin's interest in Mr. Howard's retirement is for "a sum certain as of November 21, 2003, and that said sum does not include any increase or decrease in value since that date." Thus, the court ordered that her interest in his retirement is limited to 50% of the dollar value as of November 21, 2003. Ms. Martin filed a notice of appeal from this judgment entry and presents one assignment of error: *Page 4 
 THE TRIAL COURT ERRED IN DENYING PLAINTIFF-APPELLANT ANY INCREASE IN VALUE OF HER FIFTY PERCENT (50%) SHARE IN DEFENDANT-APPELLEE'S RETIREMENT PLANS AFTER NOVEMBER 21, 2003.
 II. The Applicable Law and Our Standard of Review {¶ 7} Once a court has made an equitable property division, it has no jurisdiction to modify its decision. R.C. 3105.171(I); Pierron v.Pierron, Scioto App. Nos. 07CA3153 and 07CA3159, 2008-Ohio-1286, at ¶ 7, citing Knapp v. Knapp, Lawrence App. No. 05CA2, 2005-Ohio-7105, at ¶ 40. However, the trial court does retain jurisdiction to "`clarify and construe its original property division so as to effectuate its judgment.'" Pierron at ¶ 7, citing Knapp at ¶ 40, in turn, quotingMcKinley v. McKinley, Athens App. No. 99 CA52, 2000 WL 897994. While a court has broad discretion in clarifying the terms of its previous decree, "a court order purporting to clarify the prior judgment may not vary from, enlarge, or diminish the relief embodied in the final decree." Id. at ¶ 7, citing Knapp at ¶ 40; see, also, McKinley, supra. As we recently noted in Pierron:
 These rules are based upon the fact a settlement agreement constitutes a binding contract. See Davis v. Davis (2000) Pike App. No. 99CA630, unreported, quoting Walther v. Walther (1995), 102 Ohio App.3d 378, 383, 657 N.E.2d 332. Thus, when interpreting a divorce decree that incorporates such an agreement, courts must apply the general rules of contract interpretation. Plymale v. Wolford, Jackson App. No. 05CA5, 2005-Ohio-5224, at ¶ 7; McKown v. McKown (1995) Highland App. No. 94CA866, unreported (applying the same standard of review and rules of interpretation to divorce decrees and dissolution decrees). In essence, a court may construe an ambiguous decree, but it must enforce an unambiguous one as it is written. Parsons v. Parsons (1997), Jackson App. No. 96CA791, unreported.
Pierron at ¶ 7. *Page 5 
 {¶ 8} The initial determination of whether an ambiguity exists presents an abstract legal question, which we review on a de novo basis.Pierron at ¶ 8; see, also, Stewart v. Stewart, Ross App. No. 92CA1885,1992 WL 388546; Plymale v. Wolford, Jackson App. No. 05CA5,2005-Ohio-5224, at ¶ 7. Should we determine that an ambiguity exists, we would then afford the trial court discretion to clarify the intent of the agreement. But where no ambiguity exists, both the trial court and this court are required to apply it as written, i.e., as a matter of law. Pierron at ¶ 8, citing Stewart, supra, in turn, citing Lating v.Woodpath Development Co. (1991), 57 Ohio St.3d 212, 214, 567 N.E.2d 262.
 {¶ 9} As we have previously explained, "[contractual terms are ambiguous if the meaning of the terms cannot be deciphered from reading the entire contract or if the terms are reasonably susceptible of more than one interpretation." Lewis v. Matties, 161 Ohio App.3d 1,2005-Ohio-1975, 829 N.E.2d 318, at ¶ 19. However, mere silence on an issue or a failure to address it does not create an ambiguity where none otherwise exists. See Pierron, supra; see, also, Thomas v. Thomas, Franklin App. No. 00AP-541, 2001 WL 422967 ("[T]he divorce decree is not ambiguous because the trial court failed to award the defendant interest on her pension distribution when it could have done so.").
 III. The Divorce Decree {¶ 10} While the record in this case contains no separation agreement, both parties agree that the terms of the divorce decree were stipulated by the parties. That decree specifically states that "[i]nsofar as distribution of assets, payment of debts, spousal support and other matters, the Court finds that the parties have entered into an *Page 6 
agreement pertaining to all matters in issue[.]" It further states that "upon the parties' application, finding said agreement to be in all respects fair, just and equitable, the same is hereby adopted and approved as the order of the Court[.]" Moreover, the provision concerning the distribution of the parties' retirement is one of the enumerated paragraphs specifically referenced as an agreed term. Thus, the record demonstrates that the terms of divorce decree were reached by agreement of the parties. Accordingly, we must apply the general rules of contract interpretation and determine whether the provision in the divorce decree concerning the distribution of the parties' retirement plans is ambiguous.
 {¶ 11} The divorce decree provides that "each party shall receive 50% of the other parties' retirement accrued as of November 21, 2003." Ms. Martin contends that the trial court misinterpreted this provision, which she claims entitles her to any increase in the value of her 50% share in Mr. Howard's retirement after November 21, 2003 until the date of distribution. She also argues that the trial court's "valuation" method is inequitable. Mr. Howard, on the other hand, contends that the provision simply entitles her to receive 50% of the sum certain fixed value of his retirement plans as of November 21, 2003, nothing more and nothing less. He argues that Ms. Martin's arguments concerning equity and fairness have no merit because the parties specifically negotiated the terms of provision. Specifically, he contends that the trial court awarded Ms. Martin the parties' Hilton Head property and that in lieu of Mr. Howard appealing that decision, the parties negotiated the division of their property, including the specific terms concerning their retirement plans. *Page 7 
 {¶ 12} Under the clear and unambiguous terms of the provision, Ms. Martin is entitled to receive 50% of Mr. Howard's retirement "accrued" as of November 21, 2003. The term "accrue" means "to grow to. In past tense, in sense of due and payable; vested. It means to increase; to augment; to come to by way of increase; to be added as an increase, profit, or damage." Black's Law Dictionary (6 Ed. 1991) 14. Thus, we believe this means that she is entitled to 50% of the total increases in growth or "value" of his retirement plans as of November 21, 2003. The provision does not refer to the value of his retirement plans "accrued" as of the date of distribution. Nor does it refer to the value of Ms. Martin's 50% share of Mr. Howard's retirement plans at the time the benefits are distributed, as Ms. Martin now contends. It simply refers to his retirement as it was valued as of November 21, 2003, not the date of distribution. Thus, we believe the parties' selected "valuation date" i.e., November 21, 2003, is clear; indeed, Ms. Martin's proposed QDROs specifically indicated that the value of his retirement for purposes of establishing the value of her 50% share was in fact the fair market value as of that date, not the date of distribution as she now claims. Thus, we agree with the trial court that under the clear wording of the provision, Ms. Martin's interest in the value of Mr. Howard's retirement plans is limited to 50% of the dollar value as of November 21, 2003.
 {¶ 13} Contrary to Ms. Martin's assertions, the parties' agreed distribution of their retirement plans does not contain an award of interest, nor any provision for the allocation of investment performance. While the parties could have provided for that anticipated event, they did not do so. Likewise, the parties could have agreed to award Ms. Martin a certain percentage of the retirement's value to be calculated at a time that *Page 8 
would reflect post-decree changes. They did not take that approach either. See, e.g., Pierron, supra. Furthermore, the language of the divorce decree is not ambiguous simply because the provision did not award Ms. Martin interest on her share of Mr. Howard's retirement when it could have done so. Id., see, also, Thomas, supra.
 {¶ 14} While Ms. Martin also claims that the trial court's method of distribution is inequitable, the question of perceived inequity is not relevant to the issue of whether the decree is ambiguous on its face. See Pierron. Moreover, the record shows that the parties negotiated the agreed terms based on the trial court's decision to award Ms. Martin the parties' Hilton Head property. The trial court did not choose the "frozen" or "present-value" method over the "coverture method" as Ms. Martin claims. Rather, the court found the parties agreed to that method and the court adopted it. Therefore, we conclude that the trial court did not abuse its discretion in refusing to adopt Ms. Martin's proposed QDROs.
 {¶ 15} Accordingly, we affirm the trial court's judgment.
 JUDGMENT AFFIRMED. *Page 9