[Cite as *Enyart v. Taylor*, 2013-Ohio-4893.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
LAWRENCE COUNTY

| | | |
|---|---|---|
| TINA R. ENYART, | : | |
| | : | |
| Plaintiff-Appellee, | : | |
| | : | Case No. 13CA2 |
| v. | : | |
| | : | DECISION AND |
| ERIC D. TAYLOR, | : | JUDGMENT ENTRY |
| | : | |
| Defendant-Appellant. | : | Released: 11/01/2013 |

APPEARANCES:

Charles M. Johnstone, II and Sarah A. Stewart, Charleston, WV, for Appellant.

Brigham M. Anderson, Anderson & Anderson Co., L.P.A., Ironton, Ohio, for Appellee.

Hoover, J.:

{¶ 1}  This is an appeal of a judgment from the Lawrence County Court of Common Pleas ordering appellant Eric D. Taylor to reimburse appellee Tina R. Enyart $123,191.  This amount represented Ms. Enyart's share of the K-1 tax liability resulting from the income of the parties' formerly jointly owned company, Tri-State Pipeline, Inc.  For the reasons set forth below, we affirm the judgment of the trial court.

{¶ 2}  Appellant, Eric D. Taylor presents four assignments of error for review.

First Assignment of Error:

THE MAGISTRATE ERRED IN IMPLICITLY FINDING THE DATE

APPELLEE TRANSFERRED HER SHARES IN TRI-STATE PIPELINE,

INC. TO APPELLANT WAS DECEMBER 31, 2009.

Second Assignment of Error:

THE MAGISTRATE ERRED IN CONCLUDING APPELLEE SHOULD

NOT BE RESPONSIBLE FOR HER PRO-RATA SHARE OF TRI-STATE

PIPELINE, INC.'S INCOME FOR THE 2010 TAX YEAR.

Third Assignment of Error:

THE MAGISTRATE ERRED IN FINDING THAT APPELLEE WAS

ATTRIBUTED A DISBURSEMENT OF $500,000 FROM THE TRI-

STATE PIPELINE, INC. FOR THE 2010 TAX YEAR.

Fourth Assignment of Error:

THE MAGISTRATE ERRED IN FINDING APPELLEE PAID

PERSONAL INCOME TAX ON THE SALARY AMOUNT SHE

RECEIVED FROM TRI-STATE PIPELINE, INC. DURING THE 2010

TAX YEAR.

{¶ 3} Although Mr. Taylor sets out the above assignments of error, he structures his arguments

under "Statement of Issues Presented for Review." Because Mr. Taylor's arguments are

organized under these three issues (labeled A, B, and C) and not the four assignments of errors,

we will address these issues as appellant's arguments:

A.      THE TRIAL COURT ERRED IN ORDERING THAT APPELLANT

WAS LEGALLY RESPONSIBLE FOR THE TAX LIABILITY APPELLEE

INCURRED AS A RESULT OF HER SHAREHOLDER INTEREST IN TRI-

STATE PIPELINE, INC. DURING THE 2010 TAX YEAR.

B.      THE TRIAL COURT ERRED IN AFFIRMING THE MAGISTRATE'S

MODIFICATION OF THE PARTIES' SETTLEMENT AGREEMENT

REGARDING THE SALE AND PURCHASE OF TRI-STATE PIPELINE, INC.

C.      THE TRIAL COURT ERRED IN AFFIRMING THE MAGISTRATE'S
CONCLUSION THAT APPELLEE'S K-1 TAX LIABILITY FOR THE 2010
TAX YEAR EQUALED $123,191.00.

### I. Facts and Procedural History

{¶ 4}  Appellant Eric D. Taylor and appellee Tina R. Enyart jointly incorporated Tri-State Pipeline Inc. ("Tri-State") in 2006.  Tri-State was incorporated under the laws of Ohio as an S Corporation. The married couple separated in early 2010.  The trial court issued a final divorce decree on February 24, 2011.  When the parties first separated, they reached an agreement for Mr. Taylor to buyout Ms. Enyart's sixty percent ownership interest in Tri-State. Mr. Taylor began to make buyout payments to Ms. Enyart in April 2010.  Shortly thereafter, both parties sought legal representation and began to renegotiate an agreement.  Sometime after October 2010 the characterization of the payments for the ownership interest changed from "buyout payments" to "salary payments."  This change in characterization of the payments was in response to concerns of Tri- State's CPA that payroll taxes were not being withheld.

{¶ 5}  Eventually, the parties reached an agreement regarding all issues in the divorce. The agreement included the resolution of the issues regarding Tri-State.  This agreement was set forth in the Final Divorce Decree as follows:

> The parties are joint owners of Tri-State Pipeline, Inc., an Ohio corporation.  By
> agreement of the parties, it is herby ORDERED, ADJUDGED AND DECREED
> that the Defendant, Eric D. Taylor, purchase the stock currently owned by Tina R
> Enyart in Tri-State Pipeline, Inc.  Tina R. Enyart owns 60% of said stock.  The
> defendant will purchase said stock for the sum of $1,100,000.00.  Defendant
> agrees to pay the sum of $275,000.00 in cash by December 31, 2010 for said

stock. The remainder will be paid weekly in installments of $3,846.15 until such time as it has been paid in full. ***The Defendant shall be solely responsible for any indebtedness of the company, holding Plaintiff harmless.*** (Emphasis added). Plaintiff shall sign all documents to further effectuate this agreement.

{¶ 6} Ms. Enyart then filed two post-decree motions on separate dates. In April 2012, Ms. Enyart filed a Motion in Contempt, alleging that Mr. Taylor was behind in his payments and currently owed her $19,230. In May 2012, Ms. Enyart filed a Motion for Reimbursement, praying for an order requiring Mr. Taylor to reimburse her in the amount of $123,191 for her 2010 K-1 tax liability from Tri-State. According to Ms. Enyart, the K-1 tax liability consisted of $90,568 in federal taxes, $15,126 in Ohio taxes, and $17,497 in West Virginia taxes. A hearing in front of a Magistrate was scheduled for September 20, 2012. Mr. Taylor, Ms. Enyart, Aaron Heighton, and Lori McDonald testified at the hearing. Mr. Heighton is a CPA who was employed by Ms. Enyart. Ms. McDonald is a CPA working for Tri-State.

{¶ 7} Mr. Heighton testified that a K-1 is similar to a W-2 except a K-1 is for income from a business. Since Tri-State is an S Corporation, the income and expenses of the corporation are passed through to the shareholders. He testified that, as is common practice with S Corporations, he would at least expect to see distributions for the equivalent of the personal tax liabilities reflected on the K-1. According to his testimony, it is standard practice for companies that utilized "pass-through" taxation to pay the personal tax obligations of its shareholders. Mr. Heighton also testified that he expected K-1 income for Ms. Enyart only through February 22, 2010, based upon the agreement the parties made after initial separation. According to Mr. Heighton, he understood that beginning February 2010, Ms. Enyart was to have no further

involvement with Tri-State; however, pursuant to the agreement of the parties, he did expect her to still receive a salary.

{¶ 8} Ms. McDonald, who had been Tri-State's CPA since 2006, similarly testified that she expected Ms. Enyart to receive a two-month K-1 pursuant to the initial February 2010 buyout agreement. Then, these expectations changed at the end of December 2010 with the new settlement agreement and a buyout date of December 31, 2010. According to Ms. McDonald's own calculations, the Ohio portion of the tax related to the K-1 should not exist because Tri-State conducted no business in Ohio in 2010. Therefore, Ms. McDonald testified that the $15,126 Ohio tax figure should not be included in the K-1. Based upon her own estimation, appellee's K-1 for 2010 should have been "roughly like thirty eight thousand dollars related to the K-1."

{¶ 9} On cross-examination, Ms. McDonald was asked about the past practice of Tri-State concerning the K-1 tax liabilities of Mr. Taylor and Ms. Enyart. The transcript reads as follows:

Q. [Appellee's attorney] Okay, so in 2009 you issue these K1's. You issue one to each of them cause they both own the company.

A. [Ms. McDonald] Sure.

Q. [Appellee's attorney] And based upon the K1, just upon the K1 that you issued to her you had to issue her a check for a hundred thousand to cover the taxes?

A. [Ms. McDonald] I did not issue her a check.

Q. [Appellee's attorney] Okay, who did you issue a check for?

A. [Ms. McDonald] There was a payroll check written through Tri-State Pipeline. They didn't get any of the net proceeds. It was all for taxes.

Q. [Appellee's attorney] All money went where?

A. [Ms. McDonald] Um, part of it went to the federal government and part of it went to the State of West Virginia.

…

Q. [Appellee's attorney] I understand. But the taxes that were paid…just so the court understands the practice of 2009, the taxes that were paid did not come out of their personal accounts?

A. [Ms. McDonald] That's correct for the K1 only. The W2 they had withholdings.

…

Q. [Appellee's attorney] We compartmentalizing this. [sic] We are only talking about the K1. So…

A. [Ms. McDonald] That's was the practice, that's was the practice. [sic]

Q. [Appellee's attorney] Was that the practice in 2009?

A. [Ms. McDonald] Yes.

Q. [Appellee's attorney] Was that the practice in 2008?

A. Yes.

Ms. McDonald also testified that appellant owed $38,731 for the 2010 tax year. Tri-State distributed the money to Mr. Taylor to cover that amount.

{¶ 10} On September 25, 2012, the Magistrate made the following findings of fact pertinent to this appeal:

3. Thereafter, the plaintiff [appellee] did not receive any disbursements or compensation from the company other than her salary of $207,034.00, of which she paid her personal income taxes on;

4. In 2011, the plaintiff received a K1 attributing a disbursement of $500,00.00 [sic] to her from the business and accrued a tax liability in the amount of $123,191.00;

5. Two CPAs testified at trial and indicated that it was common practice for the company to issue disbursements to cover the K-1 law [sic] liability for the recipients of the disbursements;

6. The company issued a disbursement in 2011 to the defendant to cover his K1 tax liability;

The Magistrate ruled that Mr. Taylor should reimburse Ms. Enyart the amount of $123,191, based upon the past practice of the company to reimburse the K-1 tax liability. Shortly thereafter, the appellant filed objections to that decision and another hearing in front of the trial court was scheduled for January 9, 2013.

{¶ 11} On January 16, 2013, the trial court issued a decision adopting the Magistrate's findings and affirming the judgment ordering appellant to reimburse appellee. Appellant timely filed this appeal.

## II. Applicable Law and Standard of Review

{¶ 12} Once a court has made an equitable property division, it has no jurisdiction to modify its decision. *Martin v. Howard,* 4th Dist. Lawrence No. 07CA27, 2009-Ohio-67, ¶ 7 citing R.C. 3105.171(I); *Pierron v. Pierron*, 4th Dist. Scioto Nos. 07CA3153 & 07CA3159, 2008-Ohio-1286, ¶ 6. However, a court retains jurisdiction to " 'clarify and construe its original property division so as to effectuate its judgment.' " *Knapp v. Knapp,* 4th Dist. Lawrence No. 05CA2, 2005-Ohio-7105 at ¶ 40, quoting *McKinley v. McKinley*, 4th Dist. Athens No. 99CA52, 2000 WL 897994 (Jun. 27, 2000) *4. Although a trial court has broad discretion to clarify the

terms of its previous decree, the court 'may not vary from, enlarge, or diminish the relief

embodied in the final decree.' " *Pontious v. Pontious*, 4th Dist. Ross No. 10CA3157, 2011-

Ohio-40, ¶ 11, quoting *Knapp* at ¶ 40.  This court previously noted in *Pierron* at ¶ 7:

> These rules are based upon the fact a settlement agreement constitutes a binding
>
> contract. See *Davis v. Davis* (2000) Pike App. No. 99CA630, unreported, quoting
>
> *Walther v. Walther* (1995), 102 Ohio App.3d 378, 383, 657 N.E.2d 332. Thus,
>
> when interpreting a divorce decree that incorporates such an agreement, courts
>
> must apply the general rules of contract interpretation. *Plymale v. Wolford,*
>
> Jackson App. No. 05CA5, 2005-Ohio-5224, at ¶ 7; *McKown v. McKown* (1995)
>
> Highland App. No. 94CA866, unreported (applying the same standard of review
>
> and rules of interpretation to divorce decrees and dissolution decrees). In essence,
>
> a court may construe an ambiguous decree, but it must enforce an unambiguous
>
> one as it is written. *Parsons v. Parsons* (1997), Jackson App. No. 96CA791,
>
> unreported.

{¶ 13}  "The initial determination of whether an ambiguity exists presents an abstract

legal question, which we review on a de novo basis." *Martin* at ¶ 8, citing *Pierron* at ¶ 8.  If we

determine that an ambiguity exists, we then must afford the trial court discretion to clarify the

intent of the agreement.  *Id.* Where no ambiguity exists, the trial court and this Court are required

to apply it as written.  *Id.*

{¶ 14}  We have previously explained that "[c]ontractual terms are ambiguous if the

meaning of the terms cannot be deciphered from reading the entire contract or if the terms are

reasonably susceptible of more than one interpretation." *Lewis v. Mathes,* 161 Ohio App.3d 1,

2005-Ohio-1975, 829 N.E.2d 318,  ¶ 19 (4th Dist.)  "However, mere silence on an issue or a

failure to address it does not create an ambiguity where none otherwise exists." *Martin* at ¶ 9,
citing *Pierron,* supra; *see also Thomas v. Thomas,* 10th Dist. Franklin No. 00AP-541, 2001 WL
422967, *5 ("[T]he divorce decree is not ambiguous because the trial court failed to award the
defendant interest on her pension distribution when it could have done so.").

### III. Analysis

{¶ 15} Mr. Taylor's first argument is that the trial court erred in ruling that he is legally
responsible for the tax liability Ms. Enyart incurred as a result of her shareholder interest in Tri-
State during the 2010 tax year. He bases his argument on Ohio S Corporation law that the profits
of an S Corporation are taxed as personal income to the shareholders, regardless of whether or
not the company issued distributions. Therefore, Mr. Taylor argues that Ms. Enyart is
responsible for paying tax on her pro-rata share of Tri-State's 2010 income.

{¶ 16} In his second argument, Mr. Taylor contends that the trial court altered the
settlement agreement regarding the sale and purchase of Tri-State Pipeline, Inc. Mr. Taylor
states that the tax liabilities were not discussed during settlement; and therefore, the trial court
could not have addressed the tax liabilities after the Divorce Decree was issued. On the other
hand, Ms. Enyart contends that the trial court was effectuating the provision in the Divorce
Decree stating that "[t]he Defendant [appellant] shall be solely responsible for any indebtedness
of the company, holding Plaintiff [appellee] harmless." We will address appellant's first and
second arguments together.

{¶ 17} Our court must resolve the issue whether or not the trial court acted properly and
within its power when it ordered Mr. Taylor to reimburse Ms. Enyart the $123,191. When
determining this issue, we must be mindful of the law regarding the structure of an Ohio S
Corporation. "[A]n S Corporation is considered a "flow-through" entity whereby the income and

losses of the business are nontaxable to the corporation but instead flow through to the individual shareholders." *Dupee v. Tracy*, 85 Ohio St.3d 350, 351, 708 N.E.2d 698 (1999). "Items of income, loss, deduction, and credit are then passed through to the shareholders on a pro rata basis and are added to or subtracted from each shareholder's gross income." *Ardire v. Tracy*, 77 Ohio St.3d 409, 674 N.E. 2d 1155 (1997), fn. 1, citing Section 1366, Title 26, U.S.Code.

{¶ 18}  " 'Subchapter S of the Internal Revenue Code (Section 1361 et seq., Title 26, U.S.Code) permits the owners of qualifying corporations to elect a special tax status under which the corporation and its shareholders receive conduit-type taxation that is comparable to partnership taxation.' " *Lovell v. Levin*, 116 Ohio St.3d 200, 200-201, 2007-Ohio-6054, 877 N.E.2d 667 (2007), quoting *Ardire* at 409, fn.1. "For tax purposes, a Subchapter S corporation differs significantly from a normal corporation in that the profits generated through the S corporation are taxed as personal income to the shareholders.  The taxable income of an S corporation is computed essentially as if the corporation were an individual." *Id.*

{¶ 19}  Mr. Taylor argues that the divorce decree is not ambiguous; and therefore, the trial court cannot modify it pursuant to R.C. 3105.171 ("A division or disbursement of property or a distributive award made under this section is not subject to future modification by the court except upon the express written consent or agreement to the modification by both spouses."). Ms. Enyart claims that the trial court did not modify the divorce decree but instead followed the clause: "The Defendant [appellant] shall be solely responsible for any indebtedness of the company."  Ms. Enyart states that the K-1 tax liability is commonly and has been historically a debt of the company and has never been paid by the individual owners.

{¶ 20}  The first step in our analysis is to decide, using a de novo standard of review, whether or not the decree is ambiguous, specifically, the following sentence: "The Defendant

[appellant] shall be solely responsible for any indebtedness of the company." *Martin*, supra at ¶ 8. The trial court did not mention in its analysis whether the divorce decree was ambiguous or unambiguous. However, because the trial court relied upon the past practices of the parties when making its decision, the trial court implicitly found the divorce decree to be ambiguous.

{¶ 21} Clearly, the intent of the parties was that Mr. Taylor would be solely responsible for the indebtedness of the company, holding Ms. Enyart harmless. Tri-State had always paid the K-1 tax liabilities of the shareholders. In addition, Ms. Enyart did not receive a distribution of the monies which generated the tax liability. The only monies received by Ms. Enyart from the company in 2010 were the salary payments.

{¶ 22} Even though Mr. Taylor claims that the divorce decree is not ambiguous, he actually presents this court with a different interpretation of the terms. Although the divorce decree states that Mr. Taylor "shall be solely responsible for any indebtedness of the company," Mr. Taylor contends that he is not responsible for the K-1 tax liability as it is not a debt of the company; instead Mr. Taylor believes that the tax liability is an individual debt to be borne by Ms. Enyart. We find the sentence at issue to be ambiguous, as its terms are reasonably susceptible of more than one interpretation. Since we determine that an ambiguity exists, we must review the interpretative decision by the trial court with an abuse of discretion standard. *Martin*, supra at ¶ 8.

{¶ 23} This case presents a difficult question for this Court. It is clear from the testimony at the trial court and in the parties' arguments that the K-1 tax liabilities were never discussed in mediation or in discussions leading to the settlement agreement. According to Ohio S Corporation law, the profits and therefore debt of the company belong to the individuals, not the corporation. This is a unique feature of the S Corporation, that the individuals are taxed as if in a

traditional partnership.  So while technically the IRS correctly held Ms. Enyart responsible for her portion of the K-1 tax liability as a 60% owner throughout 2010, this would be the first time she would have to pay those taxes out of her personal finances. Historically, the practice of the company was to supply Mr. Taylor and Ms. Enyart with funds to pay their individual K-1 tax liability, either through a disbursement or payroll check.

{¶ 24} When Ms. Enyart filed her Motion for Reimbursement, her intent was not to modify the decree, but to seek the repayment of K-1 tax liability.  This had been a practice of the company; and in the context of the decree, this placed clear responsibility of the debts of the company on Mr. Taylor.  It would seem conflicting to treat her differently now.

{¶ 25}  While the trial court "has broad discretion in clarifying the terms of its previous decree", it may not "vary from, enlarge, or diminish the relief embodied in the final decree." *Pontious*, 2011-Ohio-40 at ¶ 11.  The trial court awarded $123,191 in order to effectuate the divorce decree.  The divorce decree holds Mr. Taylor responsible for the debts of the company. In addition, Mr. Taylor is also ordered to hold Ms. Enyart harmless from the debts of the company.  By the testimony of two CPAs, the trial court discovered that the practice of the company had been to cover the personal K-1 tax liability of its two owners, Mr. Taylor and Ms. Enyart.  We find the trial court's decision, holding Mr. Taylor responsible to pay Ms. Enyart's K-1 tax liability consistent with the divorce decree and the former practice of the company. Accordingly, we overrule Mr. Taylor's first and second arguments.

{¶ 26}  In his third argument, Mr. Taylor states that the trial court erred in affirming the Magistrate's conclusion that Ms. Enyart's tax liability for the 2010 tax year equaled $123,191. He explains that because no federal or state withholdings were made for the payments appellee received in 2010, Ms. Enyart grossly under withheld for that year.  He also states that no

evidence was presented that demonstrated Tri-State maintained a practice of absorbing W-2 tax liability. Appellee responds that she submitted evidence of what she paid in taxes based upon the K-1 she received in 2010. She states that Mr. Heighton explained in detail her tax liabilities amounted to $123,191 in federal and state taxes on 2010 company profit she never received.

{¶ 27} We will not reverse the amount of a judgment pursuant to a divorce decree absent an abuse of discretion. *See e.g. Elliott v. Elliott*, 4th Dist. Ross No. 05CA2823, 2005-Ohio-5405, ¶ 16. An abuse of discretion connotes more than a mere error in judgment; it implies that the court's attitude is arbitrary, unreasonable or conscionable. *Masters v. Masters*, 69 Ohio St.3d 83, 85, 630 N.E.2d 665 (1994). The amount of the award is a question of fact; we may not freely substitute our judgment for that of the trial court. *In re Jane Doe I*, 57 Ohio St.3d 135, 137-138, 566 N.E.2d 1181 (1991).

{¶ 28} Mr. Heighton, Ms. Taylor's CPA, testified that appellee's ordinary income on her 2010 K-1 was $500,383. This amount represents the sixty percent share of Tri-State's profit attributed to appellee. After a deduction of $250,000, appellee had a taxable income of $250.383. Mr. Heighton testified appellee paid taxes in the amounts of: $90,568 in federal taxes, $15,126 in Ohio taxes, and $17,497 in West Virginia taxes. In conclusion, Mr. Heighton testified to preparing appellee's taxes and she paid a total of $123,191.

{¶ 29} Tri-State's CPA Ms. McDonald testified that, in 2010, Tri-State performed all of its work in West Virginia so there is no reason the company would be responsible for appellee's Ohio tax liability. Ms. McDonald testified that appellee under withheld in 2010 due to the reclassification of the payments she received from appellant. Therefore, according to Ms. McDonald appellee received a high tax bill for 2010.

{¶ 30}  This Court did not receive any exhibits when the record was transmitted in this case.  The only evidence we have regarding the amount of K-1 tax liability is the testimony from both CPAs.  Mr. Heighton prepared Ms. Enyart's K-1 tax return and had actual knowledge of the taxes paid; whereas, Ms. McDonald gave an estimate of the tax liability without ever seeing Ms. Enyart's tax return.  The amount Ms. Enyart owed in K-1 tax liability is a question of fact, answered only by evaluating the testimony of both CPAs.  This court defers to the trial court in resolving a question of fact such as this one.  The trial court viewed the testimony of both parties and any exhibits submitted at the hearings.  Therefore, we give deference to the trial court's findings because no evidence persuades us to disturb its decision.  We overrule appellant's third argument and affirm the trial court's finding that appellee accrued a tax liability of $123,191.

## IV.  Conclusion

{¶ 31}  Appellant's arguments and assignments of error are overruled.  Therefore, we affirm the trial court's decision that ordered appellant to reimburse appellee the sum of $123,191.

JUDGMENT AFFIRMED.

**JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED.   Appellant shall pay the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Lawrence County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Harsha, J. & Abele, J.:  Concur in Judgment and Opinion.


For the Court

By:_____
        Marie Hoover, Judge



**NOTICE TO COUNSEL**

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.