[Cite as *In re T.F.*, 2025-Ohio-5384.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
VINTON COUNTY

In re T.F., P.F., and S.S.    :    Case No. 25CA704
                             :
Minor Children.              :    <u>DECISION AND</u>
                             :    <u>JUDGMENT ENTRY</u>

**RELEASED 11/25/2025**

_____

<u>APPEARANCES</u>:

Corey Mason, Logan, Ohio, pro se appellant.

William L. Archer, Jr., Vinton County Prosecuting Attorney, and Amanda K. Miller, Assistant Vinton County Prosecuting Attorney, McArthur, Ohio, for appellee South Central Ohio Job and Family Services.

Jorden M. Meadows, Logan, Ohio, for appellee mother.

John K. Clark, Jr., Jackson, Ohio, for appellee children.

_____

Hess, J.

{¶1}    Corey Mason appeals from a April 10, 2025 judgment of the Vinton County Court of Common Pleas, Juvenile Division, dismissing various motions he filed in a case involving his ex-girlfriend's three minor children.  Mason presents five assignments of error asserting that the trial court erred by: (1) denying his motion for contempt; (2) denying his motion for sanctions; (3) denying his motion for a hearing on a no-contact order and dismissing his filings on the ground that he lacked standing; (4) dismissing his filings after October 11, 2024 for lack of standing; and (5) failing to issue findings of fact and conclusions of law in violation of Civ.R. 52.  For the reasons which follow, we overrule the assignments of error and affirm the trial court's judgment.

## I. FACTS AND PROCEDURAL HISTORY

### A. Initial Proceedings

{¶2} In March 2018, South Central Ohio Job and Family Services ("SCOJFS") filed complaints in three cases alleging T.F., P.F., and S.S., were neglected and dependent children. The complaints alleged the children had the same mother, that J.F. was the father of T.F. and P.F., and that S.S.'s father was unknown. The court adjudicated the children dependent and issued a dispositional order of temporary custody of S.S. and P.F. to SCOJFS and of T.F. to an aunt, with protective supervision by SCOJFS. Later, the court granted Mason temporary custody of the children with protective supervision by SCOJFS.

{¶3} In May 2021, the court ordered Mason and mother to "exercise shared parenting" as set forth in its entry and terminated protective supervision. Later, mother asked the court to find Mason in contempt for withholding the children from her, and Mason and mother moved the court to terminate shared parenting. In August 2023, the court ordered Mason and mother to enter into a shared parenting plan as set forth in its entry, found Mason in contempt, and imposed a suspended sentence. In December 2023, the court ordered protective services. In April 2024, mother moved the court to terminate shared parenting. On July 26, 2024, the court issued an entry stating the matter came on for a hearing the day before. Among other things, the court awarded legal custody of the children to mother with continued protective supervision by SCOJFS. The entry makes no mention of Mason having companionship time, but it states that "[a] more detailed Entry/Order will be forthcoming in these cases."

**{¶4}** On August 8, 2024, the trial court verbally granted emergency temporary custody to SCOJFS. The same day, Mason moved the court to order placement of the children with him pending a shelter care hearing and to grant him temporary custody after the hearing. On August 9, 2024, SCOJFS filed a motion for an ex parte temporary custody order. The motion alleged sheriff's deputies found P.F. zip-tied to a bed, the children said mother did this, and the deputies reported that the home conditions were disgusting. The motion indicated there were questions about Mason's involvement and the truthfulness of the children's statements. The day SCOJFS filed the motion, the court issued an entry confirming its verbal order.

**{¶5}** On August 16, 2024, SCOJFS filed a complaint alleging that the children were dependent. The same day, the court issued a more detailed judgment entry regarding the July 25, 2024 hearing. Among other things, the entry states that Mason "shall have companionship the first, second, and fourth weekends of every month, Friday after school (or 6 p.m. if there is no school) to Sunday at 6 p.m. during the school year and week-on/week off in the summer."

**{¶6}** On August 27, 2024, Mason filed a "motion for supervised parenting time" during SCOJFS's investigation. Attached to the motion was a purported letter from a psychiatric services center stating that Mason had no issues which would affect his ability to care for the children. On August 28, 2024, SCOJFS moved the court to remove Mason as a party. The next day, Mason's counsel requested, and the court granted, counsel leave to withdraw. On September 9, 2024, Mason, acting pro se, filed a motion for custody. On September 24, 2024, he filed a "motion to remove from shelter care."

{¶7} On September 26, 2024, SCOJFS filed a motion for an emergency ex parte no-contact order prohibiting Mason from contacting the children. SCOJFS alleged that he had engaged in a pattern of deceit to find and contact the children, and SCOJFS believed he intended to kidnap them. That same day, the court issued an entry prohibiting Mason from having or attempting contact with the children until further order of the court. Also that day, Mason's former counsel filed an affidavit stating that claims had arisen that the letter from the psychiatric services center was forged and that counsel got it from Mason and could not verify its authenticity.

B. Mason's Motion to Dismiss and Subsequent Motions

{¶8} The court set a hearing on the ex parte no-contact order for October 25, 2024. But on October 11, 2024, Mason filed a "motion to dismiss" asking the court to dismiss him as a party. The motion stated that Mason believed this was in the best interest of all parties, particularly the children. The same day, the court issued an entry granting Mason's motion and dismissing him as a party. The entry stated that because Mason "is no longer a party at his request, the stay away order hearing set for October 25, 2024 is hereby vacated. However, the stay away order remains in full force and effect . . . until further order of this Court." In November 2024, the court adjudicated the children dependent and issued a dispositional order of temporary custody to SCOJFS.

{¶9} On December 11, 2024, Mason filed a "motion to rescind no contact order," but he withdrew it two days later. On December 26 2024, he filed a Civ.R. 60(B) motion for relief from "the judgment entered on July 25, 2024," along with a request for "expedited hearing and instanter ruling" on the motion. On February 5, 2025, he filed a request to appear at a semi-annual review hearing, which the court denied. On February 19, 2025,

he filed an "ex parte motion for immediate visitation reinstatement and no-contact order invalidity." On March 13, 2025, Mason filed a motion for sanctions for litigation misconduct. Mason claimed that he was improperly denied court-ordered companionship rights, that criminal proceedings (a falsification charge regarding the letter from the psychiatric services center) were improperly used to influence the juvenile proceeding, and that he was denied due process through procedural manipulation. On March 17, 2025, Mason filed an "emergency ex parte motion for temporary orders based on newly discovered evidence of court order violation." On March 20, 2025, he filed a motion asking the court to find mother in contempt for keeping the children August 5-8, 2024, during his court-ordered companionship time set forth in a "July 25, 2024 Judgment Entry." He also filed a "motion for expedited hearing on contempt." On March 24, 2025, the court issued an entry denying Mason's Civ.R. 60(B) motion. The court questioned whether he had standing to file the motion because he was no longer a party at his request, but the court addressed the substance of his motion. On April 4, 2025, Mason filed a "motion for hearing on no-contact order" and a "motion for expedited ruling on motions for sanctions and contempt."

## C.  April 10, 2025 Entry

**{¶10}**  On April 10, 2025, the court issued an entry resolving Mason's pending motions. Regarding the motion for hearing on no-contact order, the court found that Mason "is not a party in this case," "is not a parent," and "has no standing to file this Motion or any Motion in this case." The court also found that it previously set a hearing on the no-contact order, but before the hearing, the court granted Mason's motion to be

dismissed as a party, and for that reason, there was no hearing. Thus, the court dismissed the motion for hearing on no-contact order.

**{¶11}** With respect to Mason's contempt motion, the court found mother could not be in contempt for refusing to permit Mason's visitation with the children from August 5-8, 2024, because the court did not grant Mason visitation until August 16, 2024. The court also stated that even if mother had been in contempt, "that issue would now be moot" because she no longer had custody of the children. SCOJFS did, and "SCOJFS determines the said children's visitation." The court also again found Mason was no longer a party in the case. Thus, the court dismissed his motion for contempt.

**{¶12}** With respect to the motion for sanctions, the court observed that Mason did not explain who he wanted sanctioned. Regarding the allegation of improper denial of court-ordered companionship rights, the court found it had already addressed the issue, it was "based on a misunderstanding by Corey Mason of the Court's orders," and it was "without merit." Regarding the allegation of improper use of criminal proceedings, the court found that "whether or not a falsification charge was filed in another court against Corey Mason is not a matter for this Court to take up." Regarding the allegation of denial of due process through procedural manipulation, the court stated that Mason's efforts "appear to be designed to appeal this Court's decision and the decision of SCOJFS to protect the said children and to do what is in the best interest of the children." The court again found Mason was not a parent or party. Thus, the court dismissed the sanctions motion. The court also dismissed the other motions Mason filed after his dismissal as a party on October 11, 2024, except the Civ.R. 60(B) motion, for lack of standing, because he was not a parent or party.

## II. ASSIGNMENTS OF ERROR

**{¶13}** Mason presents five assignments of error:

**Assignment of Error No. 1**:  The trial court erred and abused its discretion by denying Appellant's Motion for Contempt based on an erroneous finding regarding the date and effect of the visitation order, and by declaring the issue moot.

**Assignment of Error No. 2:**  The trial court erred by summarily denying Appellant's Motion for Sanctions without conducting a hearing on specific allegations of litigation misconduct and abuse of prosecutorial power.

**Assignment of Error No. 3:**  The trial court erred and violated due process by denying Appellant's Motion for a Hearing on the No-Contact Order, and by dismissing his filings on the ground that he lacked standing despite being the subject of ongoing court orders.

**Assignment of Error No. 4:**  The trial court erred and violated due process by dismissing all filings after October 11, 2024 for lack of standing, on the ground that Appellant was "not a party and not a parent," even though he remained the subject of ongoing court orders and retained unresolved companionship rights.

**Assignment of Error No. 5:**  The trial court abused its discretion and violated Civ.R. 52 by failing to issue findings of fact and conclusions of law following timely and repeated requests by Appellant.[1]

## III. LAW AND ANALYSIS

### A. Motions to Dismiss

**{¶14}** In their appellate briefs, mother and the children move us to dismiss Mason's appellate brief for failure of service.  They claim Mason certified that he served all parties but did not in fact do so and that they acquired copies of his brief via other means.  Mother and the children do not support their motions with any legal authority. We deny them and proceed to address the assignments of error.

---

[1] The assignments of error are taken from pages iii-iv of the Mason's appellate brief.  The second assignment of error is stated somewhat differently on page 4 of the brief.

### B. First Assignment of Error

**{¶15}** In the first assignment of error, Mason contends the trial court erred and abused its discretion by denying his motion for contempt based on an erroneous finding regarding the date and effect of a visitation order and by declaring the issue moot. Mason suggests the court erred when it found mother could not be in contempt because he did not have court-ordered visitation from August 5-8, 2024. He claims a "July 25, 2024 Judgment Entry . . . expressly reaffirmed [his] companionship rights and set a schedule for summer parenting time." Mason also claims a party can be held in contempt for violating a court order in effect at the time of the conduct even if circumstances later change. He asserts that the court violated his due process and equal protection rights.

**{¶16}** "Contempt is defined in general terms as disobedience of a court order." *State ex rel. Corn v. Russo*, 90 Ohio St.3d 551, 554 (2001) ("*Russo*"). "Generally, a trial court possesses broad discretion when it considers a contempt motion." *Jones v. Jones*, 2021-Ohio-1498, ¶ 28 (4th Dist.). Ordinarily, we will uphold a trial court's contempt decision absent an abuse of discretion. *Id.* An abuse of discretion is "an unreasonable, arbitrary, or unconscionable use of discretion, or . . . a view or action that no conscientious judge could honestly have taken." *State v. Brady*, 2008-Ohio-4493, ¶ 23.

**{¶17}** The trial court did not abuse its discretion by denying the motion for contempt. Mother could not be in contempt for violating a July 25, 2024 judgment entry because the trial court did not issue an entry that day. The court conducted a hearing that day, but even if the court orally granted Mason companionship time at the hearing, "[i]t is axiomatic that a court speaks only through its journal entries." *State ex rel. Collier v. Farley*, 2005-Ohio-4204, ¶ 18 (4th Dist.), citing *In re Adoption of Gibson*, 23 Ohio St.3d

170, 173, fn. 3 (1986).  The court did not issue an entry granting Mason companionship time in connection with the July 25, 2024 hearing until August 16, 2024, i.e., after the time period during which Mason claims mother wrongfully withheld the children from him. Accordingly, we overrule the first assignment of error.

## C.  Second Assignment of Error

**{¶18}**  In the second assignment of error, Mason contends the trial court erred by summarily denying his motion for sanctions without a hearing. Citing "*Sain v. Roo*, 2018-Ohio-2878, ¶ 19," *Russo* at 555, and R.C. 2323.51(B)(2), Mason asserts that "[w]here a party presents substantiated allegations of attorney misconduct, the court must, at minimum, conduct a hearing and issue findings as to those claims." He claims he presented substantiated allegations of attorney misconduct, but the trial court summarily denied his motion for sanctions "without hearing or findings," which "is reversible error."

**{¶19}**  Mason has not shown the court erred by denying his motion for sanctions without a hearing.  "*Sain v. Roo*, 2018-Ohio-2878, ¶ 19" is fictitious; no case is assigned to 2018-Ohio-2878.  *Russo* exists, but it does not contain the quote Mason attributes to it or hold that a court must conduct a hearing on a motion for sanctions when a party presents substantiated allegations of attorney misconduct.  Moreover, Mason was not entitled to a hearing under R.C. 2323.51(B)(2).  R.C. 2323.51(B) states in pertinent part:

> (B)(1) Subject to divisions (B)(2) and (3), (C), and (D) of this section and except as otherwise provided in division (E)(2)(b) of section 101.15 or division (I)(2)(b) of section 121.22 of the Revised Code, at any time not more than thirty days after the entry of final judgment in a civil action or appeal, *any party adversely affected by frivolous conduct may file a motion* for an award of court costs, reasonable attorney's fees, and other reasonable expenses incurred in connection with the civil action or appeal. The court may assess and make an award to any party to the civil action or appeal who was adversely affected by frivolous conduct, as provided in division (B)(4) of this section.

(2) An award may be made pursuant to division (B)(1) of this section *upon the motion of a party* to a civil action or an appeal of the type described in that division or on the court's own initiative, but *only after the court does all of the following*:

(a) Sets a date for a hearing to be conducted in accordance with division (B)(2)(c) of this section . . . ;

. . .

(c) Conducts the hearing described in division (B)(2)(a) of this section in accordance with this division . . . .

(Emphasis added.)  R.C. 2323.51(B)(2) does not apply to motions made by a non-party, such as Mason, and even if it did, it only requires a hearing before a court makes an award to the movant.  R.C. 2323.51(B)(2) does not address whether a hearing is required before a court denies an award.  And Mason did not cite any other legal authority to support his position that he was entitled to a hearing.  He cites other legal authority under his second assignment of error, but only to support his claim of misconduct and claim that courts have inherent authority to sanction bad-faith conduct.

{¶20}  App.R. 16(A)(7) requires that an appellant's brief include "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies."  If legal authority exists to support Mason's second assignment of error, "'it is not our duty to root it out.'" *In re A.B.*, 2024-Ohio-2952, ¶ 51 (4th Dist.), quoting *State v. Alexander*, 2022-Ohio-1812, ¶ 34 (4th Dist.).  Accordingly, we overrule the second assignment of error.  To the extent Mason claims the court erred by denying his motion for sanctions without "findings," his

argument is beyond the scope of the second assignment of error, so we need not address it. *State v. Webb*, 2023-Ohio-4050, ¶ 26 (4th Dist.).

### D. Third Assignment of Error

**{¶21}** In the third assignment of error, Mason contends the trial court erred and violated due process by denying his motion for a hearing on the no-contact order and dismissing his filings on the ground that he lacked standing despite being the subject of ongoing court orders. Mason asserts that his withdrawal as a party was "coerced under duress from counsel and amid threats from opposing parties." Mason also claims the trial court never issued an order revoking his companionship rights, so he "continues to be a legally interested party with a direct, enforceable right to participate in proceedings affecting the children." In addition, Mason asserts that he is still "the named and restrained subject of the no-contact order and other adverse rulings." Mason claims "[d]ue process under both the Ohio Constitution and the Fourteenth Amendment to the United States Constitution requires that an individual subject to restrictive, stigmatizing, or liberty-limiting orders—such as a no-contact order—must be given notice and a meaningful opportunity to be heard." He claims "Ohio courts have repeatedly held that denying an evidentiary hearing where substantial rights are at stake is reversible error." He asserts that "party status cannot be manipulated to shield a court order from challenge when the order continues to directly restrain the individual seeking relief." He claims using his party status "as a procedural barrier" when he is "the direct object of ongoing court orders, constitutes a denial of due process and an abuse of discretion."

**{¶22}** Mason has not shown that the trial court erred and violated due process by denying his motion for a hearing on the no-contact order and dismissing his filings on the

ground that he lacked standing. Again, App.R. 16(A)(7) requires that an appellant's brief include "citations to the authorities, statutes, and parts of the record on which appellant relies." Mason does not support his claim that his dismissal as a party was "coerced under duress from counsel and amid threats from opposing parties" with citation to the record. And contrary to what Mason asserts, it is evident from the record that the trial court implicitly terminated his companionship time prior to his dismissal as a party. We observe that in his reply brief, Mason purports to quote *Braatz v. Braatz*, 85 Ohio St.3d 40 (1999) for the proposition that "'[c]ompanionship rights cannot be revoked without a formal motion, hearing, and best-interest finding,'" but *Braatz* contains no such quotation. He also cites "*In re Whitaker*, 36 Ohio App.3d 213 (1987)" for the position that an "order remains in force until expressly terminated by the court," but this citation is fictitious. 36 Ohio App.3d 213 is assigned to *State v. Arvanitis*, a criminal case which has nothing to do with companionship rights. Mason also states that "Ohio law does not permit the implicit or silent termination of fundamental rights. See In re M.M., 2015-Ohio-2571, ¶21 ('Termination of rights must be by clear, affirmative act of the court; no implied or silent termination is allowed.')" But this citation is also fictitious. 2015-Ohio-2571 is assigned to *Ginter v. Auglaize Cty. Bd. of Revision*, which contains no such quotation.

{¶23} Moreover, Mason's contention that he had standing to file the motions at issue because he was the "named and restrained subject of the no-contact order and other adverse rulings" is not well-taken. The trial court scheduled a hearing on the no-contact order but cancelled it after Mason requested, and the court granted his request, to be dismissed a party. Mason does not direct our attention to any real and relevant legal authority to support the position that, following his dismissal, he had standing to file

his motion for a hearing on the no-contact order or the other motions at issue. Most of the legal authority Mason cites to support his third assignment of error is fictitious. He cites "*In re K.W.*, 2016-Ohio-5272, ¶ 16," for the position that "Ohio courts have repeatedly held that denying an evidentiary hearing where substantial rights are at stake is reversible error." But 2016-Ohio-5272 is assigned to *In re L.T.* and does not support the position Mason claims it does. He cites "*State v. Smith*, 2022-Ohio-1234, ¶ 17" and "*In re G.C.*, 2020-Ohio-4092, ¶ 20" to support the position that party status cannot be used to shield a court order from challenge by someone who is directly restrained by it. But 2022-Ohio-1234 is assigned to *In re Z.L.*, 2020-Ohio-4092 is assigned to *Oregon v. Gaughan*, and these cases do not support the position Mason claims they do. Mason also purports to quote "*In re J.J.*, 2017-Ohio-5467, ¶ 29," but no case is assigned to 2017-Ohio-5467.

{¶24} Mason also cites *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976), and *State ex rel. Plain Dealer Publishing Co. v. Floyd*, 2006-Ohio-4437, ¶ 45. *Mathews* at 333 states:

> This Court consistently has held that some form of hearing is required before an individual is finally deprived of a property interest. The "right to be heard before being condemned to suffer grievous loss of any kind, even though it may not involve the stigma and hardships of a criminal conviction, is a principle basic to our society." *Joint Anti-Fascist Comm. v. McGrath*, 341 U.S. 123, 168, 71 S.Ct. 624, 646, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring). The fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965). Eldridge agrees that the review procedures available to a claimant before the initial determination of ineligibility becomes final would be adequate if disability benefits were not terminated until after the evidentiary hearing stage of the administrative process. The dispute centers upon what process is due prior to the initial termination of benefits, pending review.
>
> In recent years this Court increasingly has had occasion to consider the extent to which due process requires an evidentiary hearing prior to the deprivation of some type of property interest even if such a hearing is

provided thereafter. In only one case, *Goldberg v. Kelly*, . . . has the Court held that a hearing closely approximating a judicial trial is necessary. In other cases requiring some type of pretermination hearing as a matter of constitutional right the Court has spoken sparingly about the requisite procedures.

(Citations omitted.)  *Floyd* at ¶ 45 states:

The right to procedural due process is required by the Fourteenth Amendment to the United States Constitution and Section 16, Article I of the Ohio Constitution. *State v. Hayden,* 96 Ohio St.3d 211, 2002-Ohio-4169, 773 N.E.2d 502, ¶ 6. "[A]t its core, procedural due process under both the Ohio and United States Constitutions requires, at a minimum, an opportunity to be heard when the state seeks to infringe a protected liberty or property right. *Boddie v. Connecticut* (1971), 401 U.S. 371, 377, 91 S.Ct. 780, 28 L.Ed.2d 113. Further, the opportunity to be heard must occur at a meaningful time and in a meaningful manner." *State v. Cowan,* 103 Ohio St.3d 144, 2004-Ohio-4777, 814 N.E.2d 846, ¶ 8.

The cited provisions do not support the position that Mason had standing to file the motions at issue after the trial court, at his request, dismissed him as a party.

{¶25}  Finally, we observe that in his reply brief, Mason states that by hearing and ruling on his motions, "the trial court conferred party-in-interest status, as recognized in *In re Guardianship of Hollins*, 114 Ohio St.3d 434 (2007) ('A person may have standing to appeal if directly affected by the judgment and who participated in the proceedings.')." *In re Guardianship of Hollins* contains no such quotation.

{¶26}  "An appellant must support an assignment of error 'with arguments and supporting law.'" *In re A.B.*, 2024-Ohio-2952, ¶ 51 (4th Dist.), quoting *McCann v Webb*, 2022-Ohio-2318, ¶ 7 (4th Dist.).  If legal authority exists to support Mason's third assignment of error, "'it is not our duty to root it out.'" *Id.*, quoting *Alexander*, 2022-Ohio-1812, at ¶ 34 (4th Dist.).  Accordingly, we overrule the third assignment of error.

### E. Fourth Assignment of Error

{¶27} The fourth assignment of error is similar to the third assignment of error. Mason contends the trial court erred and violated due process by dismissing all filings after October 11, 2024, for lack of standing because he was not a party or parent even though he remained the subject of ongoing court orders and retained unresolved companionship rights. He asserts that he has ongoing companionship rights which give him standing. He claims "[w]ithdrawal as a party, particularly under coercion, cannot extinguish substantive rights granted by court order," and "Ohio courts have long recognized that only a specific, subsequent order can revoke or modify such rights." He also asserts that because he is the restrained subject of the no-contact order, he is still a party for all purposes related to that order. He claims "[i]t is a basic principle of law and due process that courts must afford the right to be heard to individuals directly affected by their orders—especially those who are the named subject of ongoing restraints or no-contact orders." He asserts that party status cannot be manipulated to shield ongoing court orders from scrutiny. Citing *In re Bonfield*, 2002-Ohio-6660, he claims that "apart from formal party status, Ohio law recognizes de facto and psychological parent protections." And he contends that "[w]here, as here, a non-biological or non-legal parent has established a parental relationship and served as the children's primary caregiver for years, the best interests of the children and basic fairness require that this individual be afforded due process and a full opportunity to be heard." He claims "[t]he rights and interests of a de facto or psychological parent cannot be extinguished through mere procedural technicalities or forced withdrawal."

**{¶28}** Mason has not demonstrated that the trial court erred and violated due process by dismissing all filings after October 11, 2024, for lack of standing. Again, App.R. 16(A)(7) requires that an appellant's brief include "citations to the authorities, statutes, and parts of the record on which appellant relies." Mason again does not support his suggestion that he was coerced into withdrawing as a party with citation to the record. And as we previously explained, it is evident from the record that the trial court implicitly terminated Mason's companionship time prior to his dismissal as a party. Mason now relies on "*In re G.C.*, 2020-Ohio-4092" for the position that the court had to issue a "specific" order to revoke or modify his companionship rights, but again, 2020-Ohio-4092 is assigned to *Oregon v. Gaughan*, and it does not support the position for which Mason cites it.

**{¶29}** Mason again fails to direct our attention to any real and relevant legal authority to support the position that, following his dismissal as a party, he had standing to file the motions at issue. He again relies on "*State v. Smith*, 2022-Ohio-1234" and "*In re G.C.*, 2020-Ohio-4092," for support. But again, 2022-Ohio-1234 is assigned to *In re Z.L.*, 2020-Ohio-4092 is assigned to *Oregon v. Gaughan*, and these cases do not support the position Mason claims they do. Mason again purports to quote "*In re J.J.*, 2017-Ohio-5467, ¶ 29," but no case is assigned to 2017-Ohio-5467. He again relies on *Mathews* at 333, but as we previously explained, the cited provision does not support the position that Mason had standing to file the motions at issue after the trial court, at his request, dismissed him as a party. The only other legal authority Mason cites is *In re Bonfield*, which has nothing to do with standing to file motions after dismissal as a party. It held that a mother's cohabiting same-sex partner did not qualify as a parent pursuant to R.C.

3109.04 but that pursuant to R.C. 2151.23(A)(2), a juvenile court could determine whether a shared custody agreement between the mother and her partner was in the best interest of the children. *In re Bonfield,* 2002-Ohio-6660, ¶ 4, 36, 50.

**{¶30}** Again, "[a]n appellant must support an assignment of error 'with arguments and supporting law.'" *In re A.B.*, 2024-Ohio-2952, ¶ 51 (4th Dist.), quoting *McCann*, 2022-Ohio-2318, at ¶ 7 (4th Dist.). If legal authority exists to support Mason's fourth assignment of error, "'it is not our duty to root it out.'" *Id.*, quoting *Alexander*, 2022-Ohio-1812, at ¶ 34 (4th Dist.). Accordingly, we overrule the fourth assignment of error.

## F. Fifth Assignment of Error

**{¶31}** In the fifth assignment of error, Mason contends the trial court abused its discretion and violated Civ.R. 52 by failing to issue findings of fact and conclusions of law following timely and repeated requests by him. Mason claims that on April 28, 2025, he "promptly filed a written request for findings of fact and conclusions of law pursuant to Civ.R. 52," and on May 23, 2025, and May 30, 2025, he renewed his request. He asserts that the trial court failed to comply with Civ.R. 52, so its judgment must be reversed, and the matter must be remanded with instructions for the court to issue findings of fact and conclusions of law.

**{¶32}** Civ.R. 52 states in pertinent part:

When questions of fact are tried by the court without a jury, judgment may be general for the prevailing party unless one of the parties in writing requests otherwise before the entry of judgment pursuant to Civ.R. 58, or not later than seven days after the party filing the request has been given notice of the court's announcement of its decision, whichever is later, in which case, the court shall state in writing the findings of fact found separately from the conclusions of law.

**{¶33}** Even if Mason had the right to make a request under Civ.R. 52, the record on appeal does not reflect that he did so as he contends. The record shows that on April 25, 2025, he filed a "motion for specific findings of fact and conclusions of law" "pursuant to Ohio Juvenile Rule 40(D)(3)(a)(iv)," which does not exist,[2] and R.C. 2151.35(B)(1), which makes no mention of findings of fact and conclusions of law. The motion makes no mention of Civ.R. 52. The record does not include any renewed requests by Mason on May 23, 2025, and May 30, 2025, but even if he requested findings of facts and conclusions of law pursuant to Civ.R. 52 in filings he claims to have made on those days, those requests would be untimely under Civ.R. 52.

**{¶34}** Accordingly, we overrule the fifth assignment of error.

G. Conclusion

**{¶35}** Having overruled the assignments of error, we affirm the trial court's judgment.

JUDGMENT AFFIRMED.

---

[2] Juv.R. 40(D)(3)(a)(ii) does address findings of fact and conclusions of law but only applies to magistrate's decisions.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED and that appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Vinton County Court of Common Pleas, Juvenile Division, to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Abele, J.: Concur in Judgment and Opinion.


For the Court


BY: _____
     Michael D. Hess, Judge



### **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**