[Cite as *Nichols v. Nichols*, 2026-Ohio-1445.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
PIKE COUNTY

MELISSA K. NICHOLS,      :

                        :

    Plaintiff-Appellee,    :      Case No. 25CA937

                        :

    v.                  :

                        :      <u>DECISION AND JUDGMENT</u>

DARRELL L. NICHOLS, JR.,    :      <u>ENTRY</u>

                        :

    Defendant-Appellant.    :

_____

APPEARANCES:

Stephen K. Sesser, Benson & Sesser, LLC, Chillicothe, Ohio, for appellant.

Marie Hoover, Hoover Law Group, LLC, Portsmouth, Ohio, for appellee.

_____

Smith, P.J.

{¶1} Darrell L. Nichols, Jr., "Husband," appeals the Judgment Entry entered February 6, 2025 by the Pike County Court of Common Pleas, Domestic Relations Division. The judgment entry resolved competing motions between Husband and his former spouse, Melissa K. Nichols, "Wife." Husband raises three assignments of error challenging (1) the court's jurisdiction in the matter; (2) the court's failure to grant a continuance at the motions hearing; and (3) an alleged lack of service of Wife's multi-branch motion upon Husband.

{¶2} Based on our review, we find no merit to the second and third assignments of error. Accordingly, those assignments of error are hereby overruled. However, we sustain the first assignment of error, in part, and overrule the remaining portion. Accordingly, the judgment is reversed in part and remanded for proceedings consistent with this opinion.

FACTUAL AND PROCEDURAL BACKGROUND

{¶3} The parties were married in 2005. Two children were born during the marriage, K.N., a female, in 2009, and C.N., a male, in 2012. Wife filed a complaint for divorce on October 25, 2021. Husband filed an answer and counterclaim. Both parties requested equitable division of marital property and debt, and allocation of parental rights. Of note, at the time the complaint was filed, the parties owned two homes at 2044 and 2060 Shuster Road in Pike County, and one home in Virginia Beach, Virginia.

{¶4} During the underlying divorce proceedings, Wife resided in Virginia, while Husband resided in Pike County. Various issues arose regarding the temporary orders, including shared parenting. The parties filed various competing motions. Both parties were represented by counsel.

{¶5} The matter proceeded to a final hearing on September 8, 2023. On October 6, 2023, the trial court filed its decision and judgment entry, noting that, post-hearing, neither party had presented the court with a written

separation agreement or read a statement of the issues into the record.

Therefore, the trial court proceeded to make its equitable division of marital

property and shared parenting determinations based on the evidence

presented at the final hearing.

{¶6} On November 1, 2023, the trial court filed a Decision and

Judgment Entry Nunc Pro Tunc.  As with the first entry, the trial court

reserved jurisdiction over the "completion, filing, qualification and/or

approval of any document necessary to transfer assets."  And, as with the

underlying proceedings, post-divorce, matters between Husband and Wife

continued to be contentious.

{¶7} On November 7, 2024, Wife filed plaintiff's multi-branch

motion.  Generally, Branch One concerned distribution of insurance

proceeds.  Branch Two concerned division of the parties' motor vehicles,

and distribution of proceeds.  Branch Three requested that the court order

Husband be solely responsible for deficiency balance on a "zero-turn"

mower and that Wife be held harmless on the debt.  Branch Four requested

reimbursement of 50 percent of medical expenses.  Branch Five requested

modification of parenting time.

{¶8} On November 22, 2024, Husband filed a motion for contempt,

asserting that Wife had interfered with parenting time.  The competing

motions came on for hearing on January 17, 2025.  On that date, Husband appeared without an attorney.  Despite Husband's indication that he would "love to have" an attorney, the trial court proceeded to take testimony from Husband and Wife.

{¶9} At the conclusion of the hearing, the trial court dismissed Husband's contempt motion.  The trial court granted the first four branches of Wife's motion.  As to Branch Five, the trial court ordered that each party submit a proposed parenting schedule within two weeks.

{¶10} Counsel for Wife submitted a judgment entry for review on January 8, 2025.  On February 3, 2025, a notice of appearance on behalf of Husband was filed.  On February 6, 2025, the trial court filed the judgment entry submitted by Wife's counsel, subject of this appeal.  Also, on February 6, 2025, Husband's counsel filed a motion for new hearing.

{¶11} On February 24, 2025, Husband's counsel filed a motion to set aside judgment entry, referencing the appealed-from entry.  On March 5, 2025, Husband filed notice of appeal.  On March 12, 2025, the trial court granted a stay, pending appeal.  Additional facts are set forth below.

### ASSIGNMENTS OF ERROR

I.     THE TRIAL COURT ERRED IN REVALUING AND DISTRIBUTING PROPERTY AS IT LACKED JURISDICTION.

II.     THE TRIAL COURT ERRED IN FAILING TO GRANT A CONTINUANCE TO THE DEFENDANT IN ORDER TO OBTAIN COUNSEL.

III.    THE TRIAL COURT ERRED IN ITS FEBRUARY 6, 2025 DECISION AND JUDGMENT ENTRY WHEN IT CONSIDERED THE PLAINTIFF'S MULTIBRANCH MOTION WITHOUT PROPER SERVICE ON THE DEFENDANT.

### Assignment of Error Two and Three

{¶12} For ease of analysis and because these facts are interrelated, we begin with joint consideration of Husband's second and third assignments of error. Under the third assignment of error, Husband asserts that the trial court should not have held the motions hearing given that proper service of Wife's multibranch motion was not made. Under the second assignment of error, Husband contends that the trial court erred by not granting a continuance. For the reasons which follow, we find these arguments are without merit.

### Standard of Review - Service

{¶13} We review a trial court's findings regarding proper service for an abuse of discretion. *See Sears v. Sears*, 2022-Ohio-2898, ¶ 15 (4th Dist.); *Lawless v. Henderson*, 2025-Ohio- (12th Dist.). An abuse of discretion implies the trial court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219 (1983).

Legal Analysis

{¶14} Civ.R. 5 governs the service and filing of pleadings and other papers subsequent to the original complaint. *See Goodman v. Goodman,* 2021-Ohio-3169, at ¶ 9 (4th Dist.). Civ.R. 5(A) provides as follows:

> Except as otherwise provided in these rules, every order required by its terms to be served, every pleading subsequent to the original complaint unless the court otherwise orders because of numerous defendants, every paper relating to discovery required to be served upon a party unless the court otherwise orders, every written motion other than one which may be heard ex parte, and every written notice, appearance, demand, offer of judgment, and similar paper shall be served upon each of the parties.

{¶15} While Civ.R. 5(A) provides that "every written motion other than one which may be heard ex parte * * * shall be served upon each of the parties," if a party is represented by an attorney, then the rules require that service be made on the party's attorney of record. Civ.R. 5(B)(1). *Patel v. Lambrecht,* 2014-Ohio-2953, at ¶ 20 (4th Dist.). "The rational[e] for this rule is that a party represented by counsel usually speaks through counsel, and counsel 'is in a better position to understand the legal import of any documents required to be served on his or her client and the nature of the action to be taken.' " *Parallel Homes, L.L.C. v. Stephens,* 2014-Ohio-840, ¶ 12 (1st Dist.), quoting *Swander Ditch Landowners' Assn. v. Joint Bd. of*

*Huron & Seneca Cty. Commrs.,* 51 Ohio St.3d 131, 134 (1990).

Furthermore, service pursuant to Civil Rule 5 may be made by "mailing it to

the person's last known address by United States mail, in which event

service is complete upon mailing." (Emphasis added.) Civ.R. 5(B)(2)(c);

*Patel* at ¶ 21. A served document "shall be accompanied by a completed

proof of service which shall state the date and manner of service * * * and

be signed in accordance with Civ.R. 11. Documents filed with the court

shall not be considered until proof of service is endorsed thereon or

separately filed." Civ.R. 5(B)(3).

{¶16} We begin by observing that the complaint reflects Husband's

address as 2044 Schuster Road. The record reflects that on December 30,

2021, Husband filed a motion for exclusive use of 2044 Schuster Road as his

residence address. In this motion, Husband specifically stated:

> Additionally, the aforementioned property [2044 Schuster Road] contains a second house (commonly known as 2060 Schuster Road, Piketon, Ohio 45661), which is listed on the same parcel number of the marital residence, and that house is currently prepared for rental to a third party and for the benefit of the parties in this case. Defendant actively manages and maintains that house on the property for the rental purposes. And, the parties have agreed to divide rental income from the property to apply to marital bills. Defendant requests that the exclusive use order extend to both residential structures on the real estate.

Thereafter, on February 15, 2022, the trial court filed an Entry on Temporary Orders which stated that the parties had reached an agreement that the parties should list for sale the property known as 2044 Schuster Road.  The court did grant exclusive use as to the 2044 address but is silent as to the 2060 address. On September 26, 2022, Wife filed a Notice of Relocation with the court.

{¶17} On May 22, 2023, the court filed an Entry which indicated that Husband requested an order for genetic testing of the minor children, which the court granted.  On September 8, 2023, Husband's trial brief indicated that the marital residence at 2044 Schuster Road "was sold in December 2022."   Absent from the record is, thereafter, any notice updating Husband's residence address.  The brief listed 2060 and 2044 Schuster Road as properties still owned by the parties.  Husband's brief further stated:  "It is unknown if Mother has complied with this Court's recent Order for paternity testing Father has complied and no results have been delivered."

{¶18} Wife's trial brief reflected the same information regarding the residential properties.  However, attached to Wife's trial brief were two documents, official in nature and signed by an administrative officer of Pike County CSEA, captioned "CSEA Administrative Order Establishment of Paternity."  These documents listed Father's address as 2060 Schuster Road.

It appears that even though the 2044 property was sold, that address was carried through on all pleadings as the case continued.

{¶19} The trial court's Decision and Judgment Entry and Decision and Judgment Entry Nunc Pro Tunc both set forth Husband's address as 2044 Schuster Road.  Both documents note that Husband was "physically living" in Paducah, Kentucky, but maintained a residence in Ohio.  Each order also contained a notice in all capital letters that "EACH PARTY TO THE SUPPORT ORDER MUST NOTIFY THE CHILD SUPPORT ENFORCEMENT AGENCY IN WRITING OF HIS OR HER CURRENT MAILING ADDRESS."

{¶20} The information about Husband's residence is conflicting prior to the divorce decree and thereafter.  On March 28, 2024, Wife attempted to file a motion with regards to the children's upcoming spring break.  The motion requested service upon Husband's attorney and upon Husband at 2044 Schuster Road.  The record shows a notice of failure of service at the 2044 address.  The notice stated as follows:

> You are hereby notified of the failure of service upon:  DARRELL L. NICHOLS, JR., which was attempted by CERTIFIED MAIL.  The reason stated on the return, if any, for failure of service is UNCLAIMED (ON BACK OF ENVELOPE, SOMEONE WROTE ADDITIONAL ADDRESS; 2060 SCHUSTER RD., PIKETON, OH 45661.)

{¶21} Wife filed the multi-branch motion on November 7, 2024. As part of the motion, she requested modification of parenting time. Attached in support was a Parenting Proceeding Affidavit. Thereon, Wife was required to provide information regarding any case which might affect the current case, including any cases relating to custody, domestic violence, etc. Wife attached a docket sheet from McCracken County Circuit Court in Kentucky, indicating that Husband had two criminal charges pending. Husband's address on the docket sheet is listed as 2060 Schuster Road, Piketon, Ohio 45661.

{¶22} Husband contends that 2060 Schuster Road was incorrect as his residence. Thus, service of process was not made in a manner reasonably calculated to apprise him of the multi-branch motion. For the reasons which follow, we disagree.

{¶23} We set forth the following discussion with the trial court at the beginning of the motions hearing, which also relates to Husband's argument that he was denied a continuance. At the January 17, 2025 hearing, the trial court inquired as follows:

> The Court: We are on the record. I'm going to go ahead and call the case….We are here today on a couple of matters. We've a multi-branch motion filed by Plaintiff…And the

Defendant filed a pro se motion for contempt over visitation as well.  And Plaintiff is present in court and she's represented by her attorney….The Defendant is present in court.  And do you have an attorney:

Nichols:     No.

Court:       Plan on getting one?

Nichols:     I would love to.

Court:       Okay.  The only thing though is we're set for a final hearing today.

Nichols:     Okay.

Court:       And this has been pending for a good long time.  I believe both parties, I think at one point lived out of state as well.  So - -

Nichols:     Um- - this - - the notice that I got, I looked at the records, and it was sent to the wrong address.

Court:       Okay.

Nichols:     And the notice that I did get, I stopped in here when I filed this - - charges.  And she printed me out a copy of it.

Court:       Okay.

Nichols:     And I believe I got the official notice for this hearing two weeks ago in the mail.

Court:       Okay. Did you move or something then, or?

Nichols:     No, it was the same address that I always had.  They- - they just mailed it to the wrong spot.

Hoover:      2060.  Is that where he is?

Nichols:     Hmm. Hmm.

Court:       Okay.  Where do you get mail to?

Nichols:     2044.

Hoover:      Your Honor, the instructions for service said 2060 Schuster Road.

Court:       Okay.

Hoover:      Is that where he lives?

Nichols:     Hmm, hmm.  That's the notice I got two weeks ago, yes.

Court:       Okay.  Well, are the parties ready to proceed?

Hoover:      The Plaintiff is ready, Your Honor.

Court:       Okay. You ready?

Nichols:     Hmm, hmm.

{¶24} Based upon our review of the record and hearing transcript, we find that the trial court did not abuse its discretion in implicitly finding that

Husband was properly served with the multi-branch motion.  We find the record is replete with evidence that service at 2060 Schuster Road was reasonably calculated to reach Husband and give him an opportunity to respond.

{¶25} We think it reasonable to assume that when Husband requested genetic testing, he was the person who provided CSEA with the address of 2060 Schuster Road.  The circumstantial evidence of criminal charges pending in Kentucky also makes it reasonable to presume that Husband is the person who would have provided his own personal information to Kentucky authorities and listed his residence address as 2060 Schuster Road, Piketon, Ohio.  We observe that when Husband filed his own motion for contempt on November 22, 2024, pro se, he listed his address as 2060 Schuster Road four separate times on the pleading.  Also convincing is Husband's own language in his request for exclusive use of the 2044 residence that the properties are listed on one parcel and that *he actively oversees and manages both 2044 and 2060.  See also Akron-Canton Regional Airport Authority v. Swinehart,* 62 Ohio St.2d 403 (1980) (While this court has found that certified mail service served at a property used solely for investment, i.e., rental purposes did not meet requirements of due process, as long as service is reasonably calculated to reach interested

parties, certified mail *can* comport with due process and each case must be examined on its particular facts).

{¶26} Wife points out that the multi-branch motion was also served upon Jason Miller, Husband's former attorney, on November 7, 2024.  And, as Wife correctly observes, Husband received a copy of the motion when he filed his own motion for contempt on November 22, 2024, and he physically attended the January 2025 hearing.  *See Price v. Combs*, 2016-Ohio-429, at ¶ 22 (2d Dist.) (because personal jurisdiction over a defendant can be obtained not only by proper service of process, but by a defendant's voluntary appearance or actions, Combs waived objection to the alleged lack of service and personal jurisdiction by participating in the proceedings).  *See also Toledo v. AH & TQ, Inc.,* 2023-Ohio-2790, at ¶ 26 (6th Dist.).

{¶27} We also note that credibility determinations lie with the trier of fact.  *See State v. Hinton,* 2025-Ohio-2291, at ¶ 18 (4th Dist.).  In this case, given his at least two-year history with these parties, the trial court was in the best position to determine Husband's credibility when he spoke before the hearing about his alleged lack of awareness of the multi-branch motion. Based on our review, we find the trial court did not abuse its discretion in finding proper service of the multi-branch motion.  It appears that every effort was made to ensure that service of the multi-branch motion was

reasonably calculated to reach Husband.  Accordingly, the third assignment of error is without merit and is hereby overruled.

Assignment of Error Two - Continuance

Standard of Review

{¶28} The decision regarding a motion to continue is left to the "broad, sound discretion" of the trial court.  *Ark Advanced Remediation, LLC, v. Watson*, 2024-Ohio-2874, at ¶ 28 (4th dist.), citing *State v. Unger*, 67 Ohio St.2d 65, (1981), syllabus; *Snyder v. Waldron*, 2013-Ohio-3416, ¶ 41 (4th Dist.); *State v. Dickess,* 2009-Ohio-4541, ¶ 9 (4th Dist.). Consequently, absent an abuse of discretion, a reviewing court will not disturb a trial court's decision.  *Fultz v. Fultz*, 2014-Ohio-3344, ¶ 17-18 (4th Dist.).

{¶29} However, "it is a cardinal rule of appellate procedure that 'an appellate court will not consider any error which could have been brought to the trial court's attention and hence avoided or otherwise corrected.' " *Sprouse v Miller,* 2008-Ohio-4384, at ¶ 11 (4th Dist.), quoting *Schade v. Carnegie Body Co.,* 70 Ohio St.2d 207, 210 (1982).  A party waives and may not raise on appeal any error that arises during the trial court proceedings if that party fails to bring the error to the court's attention, by objection or otherwise, at a time when the trial court could avoid or correct

the error. *Goldfuss v. Davidson,* 1997-Ohio-401. A failure to object at trial waives all but plain error. *Id.* The plain error doctrine is applicable in civil cases only where the error "seriously affects the basic fairness, integrity, or public reputation of the judicial process." *Id.* at syllabus. Thus, we are limited to plain error review of Husband's argument.

Legal Analysis

{¶30} Husband directs our attention to the well-established law set forth in *State v. Unger*, 67 Ohio St.2d 65 (1981), syllabus, regarding a trial court's grant or denial of a continuance. There, the Supreme Court of Ohio discussed a five-factor test a trial court must consider when deciding a motion for continuance. Husband points out that (1) he had never requested or received a prior continuance; (2) that he desired a continuance in order to obtain legal counsel, and not for an improper purpose, i.e., delay; (3) and that Husband was not properly served with the multi-branch motion and even when he received a copy of the hearing notice, he only had two weeks, a very limited time in which to obtain an attorney. Based on these factors, Husband asserts that the trial court abused its discretion in denying continuance, given the circumstances.

{¶31} While it is a "basic due process right and indeed essential to a fair trial that a defense counsel be afforded the reasonable opportunity to

prepare his case," *State v. Sowders*, 4 Ohio St.3d 143, 144 (1983), not every

denial of a continuance violates due process.  *Unger, supra,* 376 U.S. at 589.

*See also State v. Stevers,* 2023-Ohio-3050, at ¶ 21 (4th Dist.).  This Court

has also held that, "nothing requires trial courts to specifically articulate an

analysis of each *Unger* factor."  *State v. Dickens,* 2009-Ohio-4541, ¶ 13 (4th

Dist.); *Fultz, supra,* at ¶ 20.  Further, absent evidence to the contrary, we

"must presume that the trial court applied the law [in this case, the *Unger*

factors] correctly."  *State v. Combs,* 18 Ohio St.3d 123, 125 (1985); *Hartt v.

Munobe,* 67 Ohio St.3d 3, 7 (1993)

{¶32} We will not revisit the facts as set forth at length above.  As

previously discussed, the trial court noted that both parties were present and

asked Husband if he had an attorney and if he "plan[ned] on getting one."

Husband replied, "I would love to."  Nothing further was discussed

regarding Husband's desire to obtain an attorney.  Husband did not request a

continuance or voice any suggestion which could be construed as an

objection.

{¶33} To begin, we have found that proper service was made, so

Husband's asserted lack of awareness of the multi-branch motion is without

merit.  Husband next points out that he needed a continuance in order to

obtain legal counsel.  However, Husband admitted that he received a copy of

the multi-branch motion when he filed his own motion for contempt in late November, which was nearly two months before the January 2025 hearing. While he may not have had a hearing date until later, nothing would have prevented him from seeking an attorney once he had a copy of the multi-branch motion. Finally, Husband attended the hearing and participated in it without formal request for a continuance. *See Calvalry SPV 1, L.L.C. v. Furtado*, 2005-Ohio-6884 (10th Dist.) (In final analysis, defendant never requested a continuance, thus, trial court did not abuse its discretion or commit plain error in failing to perceive a motion for continuance in defendant's message to the court).

{¶34} Again, the trial court's credibility determination was likely a factor in his decision to continue on with the hearing. We cannot find that the trial court abused its discretion or committed plain error when it failed to perceive a request for continuance of the motion hearing. Based on the foregoing, the second assignment of error is also without merit. It is hereby overruled.

Assignment of Error One -Jurisdiction

{¶35} We next turn to Husband's first assignment of error, wherein Husband generally contends that the trial court erred by granting Wife's multi-branch motion.  Husband generally asserts that in doing so, the trial court lacked jurisdiction to *re-value and distribute* the property as previously decided in the original divorce decree, i.e., the decision and judgment entry nunc pro tunc.  In particular, Husband points to Branch Two of Wife's multi-branch motion.[1]

### Standard of Review

{¶36} We review a trial court's jurisdictional determination as a matter of law.  *See Enyart v. Taylor,* 2013-Ohio-4893, at ¶ 13 (4th dist.); *Sullivan v. Sullivan*, 2010-Ohio-3064, at ¶ 14 (6th Dist.), citing *Swayne v. Newman*, 131 Ohio App.3d 793, 795 (4th Dist.1998); *see also Danzig v. Biron*, 2008-Ohio-209, at ¶ 13 (4th Dist.).  Accordingly, we afford no deference to a trial court's assessment of its jurisdiction, but, rather, independently review whether a court properly determined its jurisdiction to hear a matter.

### Legal Analysis

---

[1] App.R. 16(A)(7) provides:  "The appellant shall include in its brief * * * [a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies."  Because the only part of the record Husband has cited is Branch Two of the multi-branch motion, we limit our consideration of his argument accordingly. *See Watson v. Highland Ridge Water and Sewer Assn., Inc.,* 2013-Ohio-1640, at ¶ 17.  Also, this Court is not required to make or root out arguments on behalf of an appellant. *See In re T.F*., 2025-Ohio-5384, at ¶ 20 (4th Dist.).

{¶37} Once a court has made an equitable property division, it has no jurisdiction to modify its decision. *See Martin v. Howard,* 2009-Ohio-67, ¶ 7 (4th Dist.), citing R.C. 3105.171(I); *Pierron v. Pierron*, 2008-Ohio-1286, ¶ 6 (4th Dist.). However, a court retains jurisdiction to " 'clarify and construe its original property division so as to effectuate its judgment.' " *Knapp v. Knapp,* 2005-Ohio-7105 at ¶ 40 (4th Dist.), quoting *McKinley v. McKinley,* 2000 WL 897994, *4 (4th Dist.). Although a trial court has broad discretion to clarify the terms of its previous decree, the court may not " 'vary from, enlarge, or diminish the relief embodied in the final decree.' " *Pontious v. Pontious*, 2011-Ohio-40, ¶ 11 (4th Dist.), quoting *Knapp* at ¶ 40.

{¶38} <u>Wife's request</u> under Branch Two of the multibranch motion is as follows:

> Ex-Wife moves the court to order Ex-Husband to provide proof of the sale of the vehicles: To whom the vehicles were sold? What were the selling prices of each vehicle? Ex-Wife moves the Court to order Ex-Husband to pay Ex-Wife 50% of the proceeds.

> Ex-Wife requests this Court set forth time frames on returning or picking up the cars and any money owed to Ex-Wife needs to have time frame and location provided on how Ex-Wife can pick it up or receive it. Ex-Wife also requests a court order restraining the Ex-Husband from damaging or causing the vehicles to not run for any of the cars.

{¶39} Regarding these vehicles, the trial court's Decision and

Judgment Entry Nunc Pro Tunc, (original divorce decree) November 1,

2023, provided as follows:

FINDINGS

The Court finds that the parties did not present the Court with a written Separation Agreement or read a settlement of all issues into the record. Based upon the evidence presented by the parties, the Court makes the findings set forth herein upon which it makes a fair and equitable division of property and debts and an appropriate resolution of all issues of the parties.

| O.  AUTOMOBILES | Value | Debt |
|---|---|---|
| 2007 Toyota Tacoma (Plaintiff) | $13,000.00 | $0.00 |
| 2005 Subaru Impreza (Defendant) | $7,600.00 | $0.00 |

{¶40} This court previously noted in *Pierron*: "In essence, a court

may construe an ambiguous decree, but it must enforce an unambiguous one

as it is written." *Id*. at ¶ 7; *see also* Parsons v. Parsons, 1997 WL 473675, at

*2 (4th Dist.)  The initial determination of whether an ambiguity exists

presents an abstract legal question, which we review on a de novo basis. *See*

*Pierron,* at ¶ 8; *Stewart v. Stewart*, 1992 WL 388546, at *2 (4th Dist.).

"Should we determine that an ambiguity exists, we would then afford the

trial court discretion to clarify the intent of the agreement.  But where no

ambiguity exists, both the trial court and this Court are required to apply it as written, i.e., as a matter of law." *Stewart, supra*, quoting *Latino v. Woodpath Development Co.*, 57 Ohio St.3d 212, 214 (1991).

{¶41} As we have previously explained, "[c]ontractual terms are ambiguous if the meaning of the terms cannot be deciphered from reading the entire contract or if the terms are reasonably susceptible of more than one interpretation." *Lewis v. Mathes,* 2005-Ohio-1975, at ¶ 19; (4th Dist.); *Pierron,* at ¶ 8. However, mere silence on an issue or a failure to address it does not create an ambiguity where none otherwise exists. *See Pierron*, at ¶ 10; *Thomas v. Thomas,* 2001 WL 422967, at *5 (10th Dist.) ("[T]he divorce decree is not ambiguous because the trial court failed to award the defendant interest on her pension distribution when it could have done so.").

{¶42} Here, the trial court's order is unambiguous. In the <u>original divorce decree</u> (Decision and Judgment Entry Nunc Pro Tunc), the trial court ordered:

> The following vehicles and equipment [s]hall be sold at auction, or by private sale upon agreement of the parties, and the proceeds shall be divided equally between the parties: 2007 Toyota Tacoma, 2005 Subaru Impreza, [and 11 additional vehicles and/or vehicle parts].

{¶43} In the <u>appealed-from entry</u> at Paragraph Four, the trial court ordered:

Defendant Darrell L. Nichols, Jr. shall provide to Plaintiff proof of the sales of the marital vehicles and equipment, [with the exception of the 2007 Toyota Tacoma and the 2005 Subaru Impreza]. Proof of sales shall include receipts for any cash received by Defendant; copies of checks received by Defendant; deposits in Defendant's account(s) of any monies received for the vehicles; and/or any other proof showing monies being paid to Defendant for the vehicles. Defendant shall provide a list to Plaintiff demonstrating to whom of the vehicles were sold; and 2) the selling prices of each vehicle as previously ordered by the Court. The Defendant shall pay to Plaintiff 50% of the proceeds for the sale of the vehicles by certified check within 30 days of journalization of this judgment entry…

{¶44} The trial court's original divorce decree specified 13 vehicles to be sold and the proceeds split. Most of these vehicles appeared to be in Husband's possession. We find the trial court's provisions for the sale of motor vehicles and division of proceeds in the court's original order are unambiguous. Therefore, to the extent that the trial court ordered Husband to provide proof of sale and division of proceeds of the vehicles (excluding the Toyota Tacoma and Subaru Impreza), we view the court's order to be simple enforcement of the original divorce decree.

{¶45} However, in our view, portions of the trial court's appealed-from order do involve revaluing and redistributing, which we find to be modifications of the original divorce decree. As noted above at ¶ 42, the trial court included the 2007 Toyota Tacoma and the 2005 Subaru Impreza

as vehicles which "shall be sold at auction, or by private sale upon the agreement of parties in the divorce decree." Yet, in the appealed-from entry, the trial court ordered as follows at Paragraphs Six, Seven, and Eight:

> The Court finds that the 2007 Toyota Tacoma has not been sold pursuant to the parties' divorce decree. The Court finds that the value of the 2007 Toyota Tacoma is $3,074.50. Plaintiff shall receive the 2007 Toyota Tacoma free and clear of any claims of defendant upon Plaintiff paying Defendant the amount of $1,537.25 which represents Defendant's 50% interest in the motor vehicle. **Plaintiff shall pay $1,537.25 to Defendant.**
>
> The Court finds that the 2005 Subaru Impreza has not been sold pursuant to the parties' divorce decree. The Court finds that the value of the 2005 Subaru Impreza is $5,958. Plaintiff shall receive the 2005 Subaru Impreza free and clear of any claims of Defendant upon Plaintiff paying Defendant the amount of $2,979 which represents Defendant's 50% interest in the motor vehicle. **Plaintiff shall pay $2,979 to Defendant.**
>
> Plaintiff shall retrieve the 2005 Subaru Impreza upon her payment of the $2,979 to Defendant.

{¶46} At the time of the divorce, the Toyota Tacoma and Subaru Impreza were listed with values of $13,000 and $7,600, respectively. The divorce decree included those vehicles as ones to be sold at auction or by private sale upon agreement of parties. This did not occur.

{¶47} In *Pierron,* we found that the trial court impermissibly modified its prior division of marital property by effectively giving Ms. Pierron a greater share of an employee savings plan account. The original

divorce decree unambiguously set an effective date of termination of the marriage as July 11, 2006.  Later the trial court decided that the value would be as of February 9, 2005.  It was an impermissible modification.  *Pierron*, at ¶ 14.

{¶49} Herein, the divorce decree unambiguously ordered that all vehicles be sold at auction or privately, by agreement.  The parties have been unable to agree.  As in *Pierron,* we find that the trial court impermissibly modified its prior order by assigning new values (accurate as they may be) and ordering that Wife take possession of the Subaru Impreza.  The trial court could not construe the decree in an attempt to equitably modify it.  Husband's first assignment of error is sustained in part and reversed in part.

{¶50} Accordingly, we reverse the portion of the judgment with regard to the disposition of the Toyota Tacoma and Subaru Impreza and remand the cause to the trial court for further proceedings consistent with this opinion.

JUDGMENT REVERSED IN PART AND CAUSE REMANDED.


**<u>JUDGMENT ENTRY</u>**

It is ordered that the JUDGMENT BE REVERSED IN PART AND CAUSE REMANDED and costs be assessed to appellee.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Pike County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Hess, J. and Wilkin, J., concur in Judgment and Opinion.

For the Court,

_____

Jason P. Smith
Presiding Judge

**NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 22, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**